Charles J. SHEERAN

v.

M. A. BRUDER & SONS, INC. and Teamsters Local 470.

Civ. A. No. 80–1919.

United States District Court, E. D. Pennsylvania.

Oct. 15, 1981.

Harry Lore, Philadelphia, Pa., for plaintiff.

Thomas J. McGoldrick, Bala Cynwyd, Pa., for defendant M. A. B.

Miriam L. Gafni, Philadelphia, Pa., for defendant Local 470.

## MEMORANDUM

LOUIS H. POLLAK, District Judge.

Plaintiff Charles J. Sheeran brought this action against defendants M. A. Bruder & Sons, Inc. ("MAB"), and Teamsters Local 470 ("Local 470"), under Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185; the Rehabilitation, Comprehensive Services, and Developmental Disabilities Amendments of 1978, 29 U.S.C. §§ 793 et seq.; and 42 U.S.C. § 1985. Plaintiff also asserts a pendent state claim under the Pennsylvania Human Relations Act, 43 Pa.Stat.Ann. § 955. Both defendants have filed motions for summary judgment.

For the most part, the facts are not in dispute:

MAB is a Pennsylvania corporation engaged primarily in the manufacture, sale and distribution in interstate commerce of paint, print products and related materials. MAB delivers these items by truck directly to customers as well as to its own retail store outlets. Plaintiff had been employed by MAB from 1946 to 1979, serving for the last twenty-five years in the capacity of truck driver. Local 470 is the exclusive collective-bargaining agent for MAB's truck drivers. Plaintiff was represented by Local 470 during his employment. In November, 1979, while in the process of auditing MAB's physical examination forms required by the United States Department of Transportation ("DOT"), counsel to MAB discovered a potential problem with plaintiff's physical qualifications. The problem centered around the fact that plaintiff was believed to be monocular, which, under the applicable DOT regulations, would preclude him from driving for MAB. On November 21, 1979, MAB apprised plaintiff and Local 470 of the potential problem and immediately arranged for plaintiff's physical examination. Plaintiff was examined and was diagnosed as suffering from a total loss of vision in his right eye.[1] MAB then advised plaintiff that the controlling federal regulations prohibited his continuation in the capacity of truck driver—the only job classification in Local 470's collective-bargaining agreement with MAB.

With no other available job opportunities within the Local 470 bargaining unit, and believing his discharge to be wrongful and without just cause, plaintiff filed a griev-

---

1. On deposition, plaintiff testified that he has been blind in his right eye since early childhood. (Tr. 8). Plaintiff stated that he had never concealed his condition from his employers, (Tr. 60), and that he had been required by DOT to submit to physical examinations every two years during the course of his employment. (Tr. 10).

ance with Local 470 against MAB. A discharge is subject to the grievance and arbitration procedure established in the collective-bargaining agreement between the two defendants. Pursuant to this procedure, on December 12, 1979, plaintiff and his union representatives appeared before a Joint Local Committee hearing panel. Plaintiff's representatives requested that plaintiff be returned to his previous work with full seniority and compensation for all lost earnings and benefits. Within several days after the hearing, MAB and Local 470 received the Joint Committee's written decision. By unanimous motion, the Committee sustained MAB's position, finding that plaintiff was not qualified under the DOT regulations to return to his previous work. Under provisions contained in Article 44, Section 3(d) of the collective-bargaining agreement, "[w]here a Joint Local Committee by majority vote settles a dispute, such decision shall be final and binding on both parties." Plaintiff filed his complaint in this court on May 19, 1980.

### I.

Plaintiff alleges that defendants have conspired to discharge him from his employment in violation of their collective-bargaining agreement and, therefore, of the Labor Management Relations Act of 1947. Plaintiff also alleges that defendant Local 470 has breached its statutory duty of fair representation. Plaintiff asserts that he is entitled to relief under section 301 of the Act, 29 U.S.C. § 185.[2] Defendants contend that plaintiff's claim under section 301 is barred by the applicable statute of limitations.

■ Nowhere in the Act has Congress provided for any time limitation upon the bringing of an action under section 301. In *International Union, U. A. W. v. Hoosier Cardinal Corporation*, 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966), the Supreme Court held that the timeliness of a section 301 suit would be determined "by reference to the appropriate state statute of limitations." *Id.* at 705, 86 S.Ct. at 1113. Plaintiff, by his section 301 action, in essence raises the same claim that was presented to the Joint Local Committee—that he was discharged from his employment without just cause and in violation of the collective-bargaining agreement. He also seeks the same relief, *viz.*, reinstatement to his previous work with full compensation for lost earnings. Under these circumstances, plaintiff's action is properly characterized as one to vacate an arbitration award entered against him. *United Parcel Service, Inc. v. Mitchell*, —— U.S. ——, 101 S.Ct. 1559, 67 L.Ed.2d 732 (1981); *Liotta v. National Forge Co.*, 629 F.2d 903 (3d Cir. 1980), *cert. denied*, 451 U.S. 970, 101 S.Ct. 2045, 68 L.Ed.2d 348. Plaintiff's action is therefore subject to the state statute of limitations applicable to such actions. *United Parcel Service, Inc. v. Mitchell, supra; Liotta v. National Forge Co., supra.* In *Liotta*, the Third Circuit determined that the Pennsylvania statute of limitations governing an employee's section 301 action against his employer and union is the limitation imposed by the Pennsylvania General Arbitration Act, 5 Pa.Stat.Ann. § 173 (Purdon 1963), providing for a three-month limi-

---

2. Section 185, in relevant part, provides for this court's jurisdiction over this matter as follows:

   (a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

   (b) Any labor organization which represents employees in an industry affecting commerce as defined in this chapter and any employer whose activities affect commerce as defined in this chapter shall be bound by the acts of its agents. Any such labor organization may sue or be sued as an entity and in behalf of the employees whom it represents in the courts of the United States. Any money judgment against a labor organization in a district court of the United States shall be enforceable only against the organization as an entity and against its assets, and shall not be enforceable against any individual member or his assets.

   29 U.S.C. §§ 185(a) and (b) (1978).

tation period on motions seeking to vacate an arbitration award.[3]

■ In this case, plaintiff's complaint was filed in May, 1980, approximately five months after the Joint Local Committee's December, 1979 decision. Under the applicable Pennsylvania statute, plaintiff's action is therefore time-barred.

■ Plaintiff does not seriously controvert this analysis, but instead argues that the Pennsylvania three-month limitation was repealed by the Uniform Arbitration Act of October 5, 1980, P.L. 693, No. 142, § 501(c), 42 Pa.Stat.Ann. §§ 7301 et seq., (Purdon's 1981 Pamphlet), and is therefore inapplicable to this action. Plaintiff's contention is without merit. The Uniform Arbitration Act provides for an effective date of sixty days after its October 5, 1980 enactment. The arbitration award denying plaintiff's claim was entered on December 12, 1979. Plaintiff's right of action accrued with the entry of this award and is therefore subject to the statute of limitations in effect at that time. Application of the Uniform Arbitration Act to plaintiff's action would impermissibly give that statute retrospective authority.

■ Plaintiff further contends that, even under the three-month limitation, the Joint Local Committee's failure to comply with the service requirements of 5 Pa.Stat.Ann. § 173 precludes the tolling of the period of limitation against him. This contention also is without merit. Section 173, in relevant part, provides that:

> Notice of motion to vacate, modify, or correct an award shall be filed in the prothonotary's office of the court in which the application is made, and to be served upon the adverse party, or his attorney, within three months after the award is filed, or delivered, as prescribed by law for service of notice of a motion in an action.

5 Pa.Stat.Ann. § 173. Plaintiff argues that the Committee failed to serve a copy of its decision on him and, for that reason, failed to file or deliver its award "as prescribed by law for service of notice of motion in an action." Plaintiff misconstrues section 173. Section 173 simply provides that the *notice of a motion to vacate*, etc., be served "as prescribed by law...." The legislature has established separate procedures for the filing of an award decision. 5 Pa.Stat.Ann. § 168, in relevant part, provides that the award be signed by the arbitrators, be in writing, and be delivered "to each party to the arbitration." In this case, the parties to the collective-bargaining agreement—Local 470 and MAB—were the parties to the arbitration. Plaintiff, although a beneficiary of that agreement, was not a party thereto. The Joint Local Committee was under no duty to provide plaintiff with a copy of its decision.

Furthermore, the evidence indicates that plaintiff was aware of the outcome of the proceedings shortly after they were concluded. The Committee's decision was received by Local 470's business agent on December 13, 1979. In his affidavit in support of Local 470's motion, the agent affirmed that it was his practice to contact grievants personally and advise them of the

---

**3.** In *United Parcel*, the American Federation of Labor and Congress of Industrial Organizations ("AFL–CIO"), in a brief filed *amicus curiae*, argued that courts should apply the six-month limitation period of § 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b) (1976), rather than a state analogue, to employees' section 301 actions against their unions and employers. The AFL–CIO sought to distinguish *Hoosier Cardinal* on the ground that it was an action by a union against an employer, arguing that an action brought by an employee against his/her employer and union is a hybrid § 301–breach of duty action, where the union's duty is implied from the NLRA. *See United Parcel, supra,* —— U.S. at ——, n.2, 101 S.Ct. at 1562 n.2. The Court declined to consider the argument for the reason that the grant of certiorari was to consider which state limitations period should be borrowed, not the propriety of such borrowing. The Court also observed that respondent's claim would be barred even if the six-month federal limitation period applied.

In the instant case, a six-month limitation would benefit the plaintiff. However, in view of the Third Circuit's decision in *Liotta,* I have no authority to consider whether applying a federal limitation period would be preferable to applying a state limitation period.

results of the Committee's decision. Plaintiff came to the agent's office shortly after December 13, 1979, at which time he was apprised of the outcome of the arbitration. Plaintiff inquired as to any further action Local 470 might pursue on his behalf, and was told that there was nothing further that could be done to reinstate him as a driver for MAB. Plaintiff has proffered no evidence contradicting this position. In addition, plaintiff's deposition testimony reveals that plaintiff received a copy of the Committee's decision from the distribution manager at MAB.[4] The evidence supports the conclusion that plaintiff was aware of the Joint Local Committee's decision by late December, 1979.

Wherefore, finding that there is no genuine dispute as to any material fact and that plaintiff's action, as a matter of law, is time-barred, defendants' motions for summary judgment on plaintiff's claims under section 301 of the Labor Management Relations Act will be granted.

## II.

■ Plaintiff also asserts that this court has jurisdiction over this matter pursuant to the Rehabilitation, Comprehensive Services, and Developmental Disabilities Amendments of 1978, 29 U.S.C. §§ 793 *et seq.* Section 793(a), in relevant part, provides that:

Any contract in excess of $2,500 entered into by any Federal department or agency for the procurement of personal proverty [sic] and nonpersonal services (including construction) for the United States shall contain a provision requiring that, in employing persons to carry out such contract the party contracting with the United States shall take affirmative action to employ and advance in employment qualified handicapped individuals as defined in section 706(7) of this title.

29 U.S.C. § 793(a) (West Supp.1981). Plaintiff has proffered evidence indicating that MAB had entered into paint purchase order contracts with the Departments of the Army and the Navy. The gravamen of plaintiff's claim under § 793 apparently concerns his dismissal from employment due to his monocularity. Section 793(b) provides that "any handicapped individual [who] believes [that] any contractor has failed . . . to comply with the provisions of his contract with the United States, relating to the employment of handicapped individuals . . . may file a complaint with the Department of Labor." 29 U.S.C. § 793(b) (1975). There is no evidence of record that the plaintiff has filed a complaint with the Department of Labor or has pursued any avenues of relief at that level. Accordingly, plaintiff's claim under § 793 will be dismissed for failure to exhaust available administrative remedies. *See generally McKart v. United States,* 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969).

■ Plaintiff asserts an additional claim under § 794. Section 794, in relevant part, provides that:

No otherwise qualified handicapped individual in the United States, as defined in section 706(7) of this title, shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance. . . .

29 U.S.C. § 794 (West Supp.1981). Even assuming the requisite handicap-based discrimination, plaintiff has failed to proffer any evidence establishing that defendant MAB participates in "any program or activity receiving Federal financial assistance" within the meaning of § 794. Plaintiff therefore fails to state a claim under § 794 upon which relief may be granted. Moreover, as with § 793, a claimant under § 794 is required to exhaust available administrative remedies. *Doe v. Colautti,* 454 F.Supp. 621 (E.D.Pa.1978) (Luongo, J.), *aff'd.* 592 F.2d 704 (3d Cir. 1979). Plaintiff has failed

---

4. Plaintiff testified that while he did receive a copy of the Committee's handwritten decision, the document was illegible and therefore incomprehensible. Copies of this document have been submitted by the parties to this suit. Although the copies are inferior reproductions, I find that they are legible upon close scrutiny.

to pursue any administrative remedies in connection with this claim. Accordingly, plaintiff's claim under § 794 will be dismissed.

### III.

■ Plaintiff also invokes this court's jurisdiction pursuant to 42 U.S.C. § 1985. Section 1985(3), in general, provides redress for harm occasioned by a conspiracy of two or more persons to deprive any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws. In his complaint, plaintiff alleges "that defendant Union and the defendant Company, their agents, officers, servants and employees, the exact date being unknown, did enter into a combination, confederation and conspiracy to deprive plaintiff of his right to employment, the object of said combination, confederation being to deny plaintiff all of the rights, benefits and emoluments of employment." Even assuming that the deprivation of rights complained of are rights cognizable under § 1985(3), plaintiff has proffered no evidence establishing the existence of a conspiracy between the defendants. Indeed, the following colloquy between plaintiff and Local 470's attorney evinces plaintiff's inability to offer any factual basis in support of his allegations:

Q. What evidence do you have of a conspiracy between Local 470 and the company whereby the union...

A. What do you mean by "conspiracy?"

Q. You say here, or your attorney says here on your behalf, that you, the Plaintiff, "Alleges the fact to be that Defendant Union, in breach of its statutory duty of fair representation owing to you, the plaintiff, under the provisions of the Labor Management Relations Act of 1947, conspired with the Defendant Company to permit Plaintiff's discharge to stand although there was no just cause for that discharge." Now what evidence do you have that there was a conspiracy between the union and the company for you to be discharged?

A. I never said there was a conspiracy.

Q. Okay.

A. Where did you get conspiracy at? [Plaintiff's Attorney]: I alleged that, I alleged that there was a conspiracy. THE WITNESS: Oh. Oh. [Local 470's Attorney]:

Q. Do you have any proof of that conspiracy?

A. All I said was they should have got in touch with me, and kept saying, the lawyers, it's pending, it's pending, it's pending, it's pending all the time.

\* \* \* \* \* \*

Q. ... What information or belief do you have that Local 470 and M.A. Bruder or their officers or anybody else made an agreement to make sure that you didn't get your job?

A. I didn't say that.

(Tr. 49–51 and 54).

Furthermore, plaintiff has failed to proffer evidence establishing a "racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action," as required by § 1985(3)'s language requiring intent to deprive of equal protection, or equal privileges and immunities. *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971).

Accordingly, defendants' motions for summary judgment on plaintiff's claim under 42 U.S.C. § 1985 will be granted.

### IV.

■ Finally, plaintiff asserts a pendent state claim under the Pennsylvania Human Relations Act, 43 Pa.Stat. §§ 951 *et seq.* Section 955 of that Act, in relevant part provides that:

It shall be an unlawful discriminatory practice...: (a) For any employer because of the ... non-job related handicap or disability of any individual to ... discharge from employment such individual ... if the individual is the best able and most competent to perform the services required.

43 Pa.Stat.Ann. § 955 (Purdon's 1981 Pamphlet). Plaintiff's handicap is not, within the meaning of this section, "non-job

related." In fact, the evidence indicates that the sole reason for plaintiff's discharge from employment was MAB's discovery that plaintiff's monocularity precluded, under DOT regulations, his continuation in the capacity of truck driver for MAB.

Moreover, section 959 of the act, in relevant part, provides that:

Any complaint filed . . . must be so filed within ninety days after the alleged act of discrimination.

43 Pa.Stat.Ann. § 959 (Purdon's 1981 Pamphlet). As reflected in plaintiff's deposition testimony, (Tr. 36–37), and MAB's exhibit no. 3 attached thereto, plaintiff attempted to file a charge with the Pennsylvania Human Relations Commission against MAB. The Commission, however, determined that the filing of plaintiff's complaint was beyond the applicable statute of limitations and accordingly dismissed the complaint.

I find that the Commission's determination was proper. I will, therefore, dismiss plaintiff's claim under the Pennsylvania Human Relations Act.

Wherefore, I will enter an order accompanying this memorandum granting defendants' motions for summary judgment and dismissing plaintiff's claims in accord with this memorandum.