Kenneth K. KENNARD, Plaintiff,

v.

UNITED PARCEL SERVICE, INC., and Local 243 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, jointly and severally, Defendants.

Civ. No. 81–70156.

United States District Court,
E. D. Michigan, S. D.

Feb. 16, 1982.

**1140**

Michael L. Pitt, Detroit, Mich., for plaintiff.

Robert M. Vercruysse, Detroit, Mich., for United Parcel.

Ted J. Cwiek, Detroit, Mich., Gerry M. Miller, Milwaukee, Wis., for Local 243.

## OPINION

GUY, District Judge.

Plaintiff filed an initial complaint on January 15, 1981 against his employer, United Parcel Service (UPS), and his Union, Local 243 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (Union).[1] The complaint alleged a violation of the United States Arbitration Act, 9 U.S.C. § 10 (Count I), and asserted claims under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, for the breach of the duty of fair representation against the Union and wrongful discharge against UPS (Count II). Pursuant to defendants' earlier motions, this court dismissed Count I of the complaint for lack of standing under the United States Arbitration Act.

In addition to claiming damages, plaintiff seeks to set aside an arbitration award as requested relief for defendants' alleged violation of their respective duties under § 301. The arbitration decision rendered on October 21, 1980 by the United Parcel Service Joint State Grievance Committee denied plaintiff's grievance and upheld his discharge by UPS. Plaintiff received notice of this decision on October 28, 1980.[2]

The question before the court raised by defendants' motions to dismiss and the motions for reconsideration[3] concerns the retroactive operation of the rule established in *United Parcel Service, Inc. v. Mitchell*, 451

---

1. Plaintiff amended his complaint as a matter of right on February 25, 1981. Any further mention of the complaint in this Opinion references the first amended complaint.

2. Plaintiff received a *copy* of the arbitration decision subsequent to filing suit in federal court.

3. The Union filed its motion for reconsideration on October 7, 1981. On October 14, 1981, UPS filed a supplemental brief in support of the Union's motion. For purposes of this Opinion, the court will respond to the arguments made by the defendants as if each filed a motion for reconsideration.

U.S. 56, 101 S.Ct. 1559, 67 L.Ed.2d 732 (1981), decided subsequent to the filing of this lawsuit. The Supreme Court in *Mitchell* held that the state statute of limitations governing actions to vacate arbitration awards should be applied to determine the timeliness of § 301 suits against an employer if the alleged wrongful discharge proceeded through arbitration prior to suit in federal court.[4] The Supreme Court decision resolved a conflict in the circuits as to the appropriate state statute of limitations in certain § 301 actions.[5] The *Mitchell* court determined that a § 301 claim against plaintiff's employer was "more analogous to an action to vacate an arbitration award than to a straight contract action." *Id.* at 62, 101 S.Ct. at 1564. By rejecting the statute of limitations applicable in contract actions, the Court reversed the Second Circuit below which had found that specific limitation period appropriate in the § 301 context. *See, Mitchell v. United Parcel Service, Inc.,* 624 F.2d 394 (2nd Cir. 1980), *reversed,* 451 U.S. 56, 101 S.Ct. 1559 (1981). The Court also found limitation periods governing actions upon a statute, personal injury actions, or malpractice actions inapposite to § 301 claims. *Mitchell, supra,* at 62 n.4, 101 S.Ct. at 1564 n.4.

Subsequent to the decision in *Mitchell,* defendants in the case *sub judice* moved to dismiss plaintiff's complaint on the basis of the twenty-day limitation period governing actions to vacate arbitration awards under Michigan General Court Rule (GCR) 769.[6] Plaintiff responded to defendants' motions

to dismiss by arguing, *inter alia,* that the rule established in *Mitchell* should not be applied retroactively to this case. This court denied defendants' motions based on the tripartite test outlined in *Chevron Oil Co. v. Huson,* 404 U.S. 97, 106–07, 92 S.Ct. 349, 355–56, 30 L.Ed.2d 296 (1971):

> In our cases dealing with the nonretroactivity question, we have generally considered three separate factors. First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed. Second, it has been stressed that "we must ... weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." Finally, we have weighed the inequity imposed by retroactive application, for "[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the 'injustice or hardship' by a holding of nonretroactivity."

(Citations omitted.)

Both defendants have moved for reconsideration of the court's denial of their motions to dismiss on the basis of the statute of limitations.[7] They argue several points in favor of their motions.

---

4. While the limited question presented on *certiorari* to the Supreme Court involved the appropriate state statute of limitations applicable in a § 301 claim against an employer for wrongful discharge, many courts have applied the holding of *Mitchell* to "hybrid" suits against both the Union and the employer. *See Singer v. Flying Tiger Line, Inc.,* 652 F.2d 1349, 1353 (9th Cir. 1981); *contra Sear v. Cadillac Auto. Co. of Boston,* 654 F.2d 4, 6–7 (1st Cir. 1981) (dictum); *Bates v. American Tara Corp.,* No. C 81–768 A (N.D.Ga. Sept. 29, 1981). See also, *Mitchell,* 451 U.S. at 71–76, 101 S.Ct. 1568–1571 (Stevens, J., concurring in part and dissenting in part).

5. A direct conflict in the circuits developed when the Second and Third Circuits reached opposite conclusions in their choices between state statutes of limitations respective to arbitration suits and contract actions. *Liotta v. National Forge Co.,* 629 F.2d 903 (3rd Cir. 1980), *cert. denied,* 451 U.S. 970, 101 S.Ct. 2045, 68 L.Ed.2d 348 (1981).

6. General Court Rule 769.9(2) provides:

(2) An application under this Rule shall be made within 20 days after delivery of a copy of the award to the applicant, except that, if predicated upon corruption, fraud or other undue means, it shall be made within 20 days after such grounds are known or should have been known.

7. The standard of review governing motions for reconsideration is as follows:

*Grounds*

Generally, and without restricting the discretion of the Court, motions for rehearing or reconsideration which merely present the

## I.

Initially, defendants contend that a district court lacks discretion to bar retroactive operation of an appellate court decision. In summary, defendants argue that retroactivity is the rule while prospectivity is the exception effective only when an *appellate* court so rules.

An analysis of defendants' argument evidences confusion between two distinct precepts impacting the doctrine of stare decisis. Defendants argue that a decision barring retroactive application of a higher court's holding is beyond the power of a district court. However, defendants confuse a decision by a district court to apply new precedent to a case before it predicated on facts which occurred prior to the rendition of a new rule with "prospective overruling," an appellate doctrine wherein the court overrules prior precedent yet refuses to apply that new rule of law to the case at bar.

■ While the general rule is that judicial precedent should normally be given both retroactive and prospective effect, courts have favored doctrines lending greater flexibility in controlling the impact of stare decisis. *See generally, Zweibon v. Mitchell,* 606 F.2d 1172, 1175–77 (D.C.Cir. 1979). One such doctrine, prospective overruling, involves two separate functions of an appellate court:

> Proponents of the prospective-limitation approach urge that an appellate court performs two distinct functions in deciding a case before it—disposing of that case, and shaping the decisional law; and that since the factors that should control these two functions may be fundamentally different, it is sensible for the court to consider these factors in two separate categories. Or, stated in another way, when precedent is under attack,

an appellate court should give attention separately (1) to the rule under attack, and whether it ought to be overruled; and if so, (2) to whether, in the disposition of the case at bar, the new rule should for any reason not be applied. 1B *Moore's Federal Practice* ¶ 0.402[3.–2] at 182. Unlike an appellate court, a district court cannot shape decisional law by overruling precedent, since it lacks the power to do so, but instead merely applies the law as it finds it. "Decisions of district courts may persuade other courts by the force of the supporting rationale, but they are not binding in any other case, even before the same judge who rendered the decision, nor upon any other court. (E.g., H. Black (1912) *The Law of Judicial Precedents* 10 *et seq.*)" (Footnotes omitted.) *Kessler v. Associates Financial Services Co.,* 573 F.2d 577, 579 (9th Cir. 1977).

■ However, district courts and appellate courts alike may determine, under the factors announced in *Chevron,* whether a precedent setting decision should be applied retroactively *to an individual case.* The Supreme Court, in *Bowen v. United States,* 422 U.S. 916, 920, 95 S.Ct. 2569, 2573, 45 L.Ed.2d 641 (1975), instructed that "district courts and courts of appeals should follow our practice, when issues of both retroactivity and application of constitutional doctrine are raised, *of deciding* the retroactivity issue first." While raised in the context of applying a new constitutional principle retroactively, the statement reiterates the authority of district courts to make the initial decision concerning nonretroactivity. The decision concerning nonretroactivity in turn depends upon an independent analysis of the *Chevron* factors as applied to an individual case. By refusing to grant retroactive effect to the rule established in *Mitchell,* this court did not overstep its authority to refuse retroactive operation of a new rule of law.[8]

same issues ruled upon by the court, either expressly or by reasonable implication, will not be granted. The movant must not only demonstrate a palpable defect by which the Court and the parties have been misled but also show that a different disposition of the case must result from a correction thereof.

Rule 17k(3) of the Local Rules of the United States District Court for the Eastern District of Michigan.

8. Judge Weis, dissenting in *Marino v. Bowers,* 657 F.2d 1363, 1375 n.4 (3rd Cir. 1981) (en banc) notes:

The terms retroactive, nonretroactive, and prospective have been defined as presenting the issue whether a case that substantially

## II.

Defendants contend that this court erroneously interpreted the three *Chevron* factors when applied to the case before it.

### A.

█ In deciding whether a new decisional rule should be limited to prospective application, the first criterion of *Chevron* requires the court to consider whether the *Mitchell* decision establishes a "new principle of law, either by overruling clear past precedent on which the litigants may have relied or by deciding an issue of first impression whose resolution was not clearly foreshadowed."[9] Thus, a court must look both to the state of the law at the time plaintiff contemplated suit and the reasona-

ble perceptions of those persons who claim to have relied on it.[10]

█ Defendants make several arguments in regard to the first prong of *Chevron*. Defendants contend that the *Mitchell* decision did not constitute a sharp break in the law. They point to the fact that the state of the law was unsettled with no Supreme Court precedent on point and diverse opinions on the issue throughout the federal courts. Despite the clear ruling of the Sixth Circuit in *Smart v. Ellis Trucking Co., Inc.*, 580 F.2d 215 (6th Cir. 1978), *cert. denied*, 440 U.S. 958, 99 S.Ct. 1497, 59 L.Ed.2d 770 (1979), defendants emphasize the holding in *Liotta v. National Forge Co.*, 629 F.2d 903 (3rd Cir. 1980), *cert. denied*, 451 U.S. 970, 101 S.Ct. 2045, 68 L.Ed.2d 348 (1981), which expressly repudiated *Smart*.[11]

---

alters the relevant body of prior law should govern (1) only future cases and neither the parties before the court nor any previous or pending cases ("prospectivity"), *see, e.g., Cipriano v. City of Houma*, 395 U.S. 701, 89 S.Ct. 1897, 23 L.Ed.2d 647 (1969); (2) future cases as well as the litigants at bar but not previous or pending cases ("nonretroactivity"), *see, e.g., Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), and *Desist v. United States*, 394 U.S. 244, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969); and (3) future cases, the present litigants, and all fact situations arising before the date of the law-changing decision that are still reviewable either by direct appeal or by collateral attack ("retroactivity"), *see, e.g., Moore v. Illinois*, 408 U.S. 786, 92 S.Ct. 2562, 33 L.Ed.2d 706 (1972).

While most courts use the various terms interchangeably, the discussion highlights certain subtleties in the area.

**9.** One court has noted:

The first part of this test gauges whether the principle in question is new or is simply a restatement of already established principles and the application of those principles to a particular set of facts. A decision establishes a new principle of law "either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed." *Chevron Oil Co. v. Huson*, 404 U.S. 97, 106, 92 S.Ct. 349, 355, 30 L.Ed.2d 296 (1971) (citations omitted); *Caver v. Alabama*, 577 F.2d 1188, 1193 (5th Cir. 1978). Only a decision which establishes a new principle of law need be considered for prospective application. A decision which merely restates existing law or which simply applies already established law to a set of facts different from those which gave birth to the

original principle is given retroactive application. *United States v. Ross*, [655 F.2d 1159 (D.C.Cir.1981) (en banc) ].

*Battie v. Estelle*, 655 F.2d 692, 697 (5th Cir. 1981).

**10.** In applying the first criterion of *Chevron*, there is some dispute as to whether the court looks to the law as it appeared at the time of the new decision, or at the time when a claim arose and a plaintiff relied on the extant law. This distinction has little impact in this case where a difference of only several months separates the two time periods. However, the court favors the analysis in *Wachovia Bank & Trust v. National Student Marketing*, 650 F.2d 342, 347–48 (D.C.Cir.1980), *cert. denied Peat, Marwick, Mitchell & Co. v. Wachovia Bank & Trust Co.*, —— U.S. ——, 101 S.Ct. 3098, 69 L.Ed.2d 965 (1981), which held that a court must compare the new limitations ruling with the law the plaintiff relied upon when he contemplated suit.

**11.** In *Liotta*, the Third Circuit applied the three-month statute of limitations in the Pennsylvania Arbitration Act to bar plaintiff's wrongful discharge claim against his employer. The court commented:

[T]he fact that Liotta alleges that the arbitration award is invalid due to the Union's breach of its duty of fair representation does not change the limitations period because the suit here is against the Company and not the Union. Thus, it is clear that Liotta was dissatisfied with and simply seeks to upset the arbitrator's decision that the Company did not wrongfully discharge him.

. . . .

Courts in other jurisdictions have consistently applied the statute of limitations pertaining to appeals from arbitration awards

Under *Smart*, a federal court in Michigan applied Michigan's three-year limitations period controlling the timeliness of tort claims to actions for breach of the duty of fair representation brought in conjunction with a wrongful discharge claim.[12] The court specifically noted that despite the adverse ·ruling before an arbitration panel which placed a bar between the plaintiff and any recovery against the defendants, the employee's "action for wrongful discharge is not in the nature of a motion to vacate or modify an arbitration award, at least to the extent that it states a claim under § 301." *Smart, supra*, at 219. The employer in *Smart* had argued that GCR 769 rendered plaintiff's claim time barred, but the Sixth Circuit disagreed and explicitly rejected the application of GCR 769 to § 301 disputes. The court noted:

> Although the effect of a judgment for Appellant would be to nullify the arbitral decision, the § 301 action is "independent" of the grievance process. *See Hines v. Anchor Motor Freight*, 424 U.S. at 554, 96 S.Ct. at 1048, 47 L.Ed.2d at 231. Indeed, such a claim can be brought even before an arbitral decision where a union refuses in bad faith to process a grievance. *Vaca v. Sipes*, 386 U.S. 171, 186, 87 S.Ct. 903 [914] 17 L.Ed.2d 842 (1967). The fact that the plaintiff must show a flaw in the grievance process as a prerequisite to recovery does not alter the basic focus of the § 301 claim on the propriety of the discharge itself.

*Smart, supra*, at 219.

Prior to the Supreme Court's review of *Mitchell*, the Second Circuit in deciding the case relied on *Smart* when it refused to apply the New York statute of limitations governing the vacation of arbitration awards. The Supreme Court reversed the Second Circuit thereby implicitly rejecting the precedent upon which that appellate court relied. Additionally, the Supreme Court, unlike the Sixth Circuit, focussed its attention not on the propriety of the discharge but on the "indispensible predicate" in a § 301 claim against an employer of proving that the union breached its duty of fair representation. Due to the binding nature of the arbitration decision on all parties to the collective bargaining agreement, plaintiff could attain no relief against his employer until he initially established that the Union did not fairly represent him at the arbitration hearing. Since the arbitration decision stood as a bar between plaintiff and any expectation of relief from his employer, the Supreme Court held that the suit was more analogous to an action seeking to set aside an arbitration award and chose the state limitation period relating to vacating such awards.[13]

The Supreme Court's rationale underlying *Mitchell* sharply differs from the view held by the Sixth Circuit rejecting any similarity between actions for wrongful discharge and motions to vacate arbitration

rather than the longer statute of limitations governing actions bottomed on written contracts when such actions seek to vacate arbitration awards. *E.g. Barbarino v. Anchor Motor Freight, Inc.*, 421 F.Supp. 1003 (W.D. N.Y.1976); *DeLorto v. United Parcel Service, Inc.*, 401 F.Supp. 408 (D.Mass.1975); *Hill v. Aro Corp.*, 275 F.Supp. 482 (N.D.Ohio 1967); *contra, Smart v. Ellis Trucking Co.*, 580 F.2d 215 (6th Cir. 1978), *cert. denied*, 440 U.S. 958, 99 S.Ct. 1497, 59 L.Ed.2d 770 (1979). *Liotta v. National Forge Co.*, 629 F.2d 903, 905–06 (3rd Cir. 1980), *cert. denied*, 451 U.S. 970, 101 S.Ct. 2045, 68 L.Ed.2d 348 (1981).

**12.** The court noted that *International Union, UAW v. Hoosier Cardinal*, 383 U.S. 696, 704–05, 86 S.Ct. 1107, 1112–13, 16 L.Ed.2d 192 (1966), required "the timeliness of a § 301 suit . . . is to be determined, as a matter of federal law, by reference to the appropriate state statute of limitations." Michigan courts had previously characterized this type of labor dispute as one for injury to person or property governed by the three year period in M.C.L.A. § 600.5805(7). *Glowacki v. Motor Wheel Corp.*, 67 Mich.App. 448, 241 N.W.2d 240 (1976). The Sixth Circuit found no reason to reject this characterization. *Smart*, 580 F.2d at 217 n.1.

**13.** Although M.C.L.A. § 600.5001(3) exempts collective labor contracts from the provisions of the statutory process for arbitration, an employee's inability to bring direct suit to vacate an arbitration award "does not mean that his § 301 claim, which if successful would have the same effect, is not 'closely analogous' to such an action. *Mitchell*, 451 U.S. at 61 n.3, 101 S.Ct. at 1563 n.3.

awards. There can be no dispute that *Mitchell* vitiated any further viability of the *Smart* rationale in a § 301 claim against an employer where the claim had proceeded to arbitration prior to suit in federal court.

Still, it might be argued and some courts may conclude that *Smart* retains some precedential value. *Smart* involved a § 301 suit against *both* plaintiff's union and his employer which was instituted subsequent to a decision by the arbitration board to uphold plaintiff's discharge. As noted earlier, *Mitchell* involved the appropriate state limitations period in a wrongful discharge claim *solely* against the employer. *See, Mitchell, supra,* at 60 n.2, 101 S.Ct. at 1562–63 n.2. Indeed, the decision in *Mitchell* resolved the conflict between the Second and Third Circuits pertinent to suits solely against an employer for wrongful discharge. *Id.* at 74 n.5, 101 S.Ct. at 1570 n.5 (Stevens, J., concurring in part and dissenting in part); *Cf. id.* at 65–68 (Stewart, J., concurring in judgment). *See also Liotta, supra,* at 905.

The conclusion reached by this court that *Mitchell* is controlling precedent in hybrid § 301 suits against plaintiff's union and his employer as well as in a single cause of action against an employer leads this court to hold that the *Mitchell* decision established a new principle of law by overruling "clear past precedent on which litigants relied" in this circuit.[14] *Cf. Delcostello v. IBT,* 524 F.Supp. 721 (D.Md.1981). A litigant in this district proceeded under the *Smart* decision as did this court when analyzing the limitations question because no prior Supreme Court case dictated a result contrary to *Smart.* The lack of Supreme Court comment on the issue[15] combined with the Sixth Circuit's reaffirmation of *Smart* in *Gallagher v. Chrysler Corp.,* 613 F.2d 167 (6th Cir. 1980), belies the turmoil suggested by defendants. The conflict existing between the Second and Third Circuits hardly foreshadowed *Smart's* demise. "[W]here ... a decision displaces the weight of precedent relied upon by the plaintiff, prospective, rather than retrospective, application must be the rule." *Wachovia Bank & Trust v. National Student Marketing,* 650 F.2d 342, 348 n.13 (D.C.Cir. 1980), *cert. denied, Peat, Marwick, Mitchell & Co. v. Wachovia Bank & Trust Co.,* —— U.S. ——, 101 S.Ct. 3098, 69 L.Ed.2d 965 (1981). See also, *Marino v. Bowers,* 657 F.2d 1363, 1367–68 (3rd Cir. 1981) (en banc).[16]

14. Defendants contend that *Gas Workers Local No. 80 v. Michigan Consolidated Gas Co.,* 503 F.Supp. 155 (E.D.Mich.1980), presaged the new rule of *Mitchell.* However, *Gas Workers* could not fairly be read to provide warning that further reliance on *Smart* would be misplaced.

First, *Gas Workers* involved a direct action to set aside an arbitration award as beyond the weight of the evidence and beyond the provisions of the collective bargaining agreement. Although premised under § 301, this type of case differs from the more common action which involves "claims of the breach of the duty of fair representation tainting an otherwise binding arbitration process." *Bakery Salesmen, Drivers, Warehousemen and Helpers Local Union No. 51 v. ITT Continental Baking Co.,* No. 81–72132 (E.D.Mich. Nov. 18, 1981).

Secondly, Judge Boyle chose the 20-day limitations period as an alternative to her initial choice of the three-month provision of the United States Arbitration Act. *Gas Workers, supra,* at 158.

15. *See* note 4, *supra.* Contrary to what defendants argue, this court is not convinced that the grant of certiorari in *Mitchell* immediately prior to the arbitration board's decision heralded a change in the state of the law.

16. Defendants argue that a plaintiff does not justifiably rely on local precedent where there are conflicting decisions in the circuits. This premise is not without support. *See United States v. Serfass,* 492 F.2d 388 (3rd Cir. 1974), *aff'd.* 420 U.S. 377, 95 S.Ct. 1055, 43 L.Ed.2d 265 (1975); *Dasho v. Susquehanna Corp.,* 461 F.2d 11 (7th Cir.) *cert. denied* 408 U.S. 925, 92 S.Ct. 2496, 33 L.Ed.2d 336 (1972). However, this court is in agreement with the Ninth Circuit's analysis in *Wiltshire v. Standard Oil Co. of Cal.,* 652 F.2d 837, 841 (9th Cir. 1981), which approached the question of retroactivity under *Chevron* and declined to apply a recent Supreme Court decision adopting a single circuit's approach to an issue:

The Supreme Court in *Mohasco [Corp. v. Silver,* 447 U.S. 807, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980) ], discusses the conflicting approaches taken by the Seventh, Eighth, and Tenth Circuits on the filing requirement challenged here. The Court then adopts the Seventh Circuit's approach, thus overruling a substantial body of case law from other circuits—clear past precedent on which litigants have relied. Further, although one might argue that the Seventh Circuit's decision "foreshadowed" *Mohasco,* given the

In *Kikos v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen, and Helpers of America*, 526 F.Supp. 110, 115 (E.D.Mich.1981), the court noted that "*Mitchell* ... overruled past precedent in the Sixth Circuit," and concluded that the plaintiff had satisfied the first criterion under *Chevron. Accord, Brain v. Roadway Express, Inc.*, No. C80–2338 (N.D.Ohio Dec. 3, 1981). Similarly, this court concludes that plaintiff meets the test imposed by the first criterion of *Chevron*.

### B.

■ The second consideration dictated by *Chevron* requires the court to examine the prior history of the rule in question, its purpose and effect, to determine " 'whether retrospective operation will further or retard its operation.' " *Chevron, supra*, 404 U.S. at 107, 92 S.Ct. at 355. The Supreme Court in *Mitchell* explained the purpose for choosing the particular statute of limitations it did for application in § 301 cases that had proceeded through arbitration:

> We said in *Hoosier Cardinal* that one of the leading federal policies in this area is the "relatively rapid disposition of labor disputes." *Cf.* 29 U.S.C. § 160(b) (1976) (6-month period under NLRA). This policy was one of the reasons the Court in *Hoosier Cardinal* chose the generally shorter period for actions based on an oral contract rather than that for actions upon a written contract, *ibid.*, and similar analysis supports our adoption of the shorter period for actions to vacate an arbitration award in this case.
>
> It is important to bear in mind the observations made in the *Steelworkers Trilogy* that "[t]he grievance machinery under a collective bargaining agreement is at the very heart of the system of industrial self-government ... The processing machinery is actually a vehicle by which meaning and content are given to the collective bargaining agreement." Although the present case involves a fairly mundane and discrete wrongful dis-

charge complaint, the grievance and arbitration procedure often processes disputes involving interpretation of critical terms in the collective-bargaining agreement affecting the entire relationship between company and union. This system, with its heavy emphasis on grievance, arbitration, and the "law of the shop," could easily become unworkable if a decision which has given "meaning and content" to the terms of an agreement, and even affected subsequent modifications of the agreement, could suddenly be called into question as much as six years later.

*Mitchell, supra*, at 63–64, 101 S.Ct. at 1564. (Citations omitted.) The Court commented that "given the choices present here" between the six-year statute of limitations for breach of contract and the 90-day period imposed under New York law for setting aside an arbitration award, the shorter period best promoted the general labor law policy of "relatively rapid disposition of labor disputes."

■ At the original hearing on defendants' motions to dismiss, this court acknowledged that the rule in question promoted timely and speedy resolutions of labor disputes, but added that the plaintiff had resorted to the court more quickly than demanded by the 90-day limitation period applied in *Mitchell*. Therefore, the court stated that on the facts of this case, a denial of retroactive application of the rule established in *Mitchell* would neither retard nor advance the general labor policy underlying the rule.

Defendants argue that this finding by the court evidences a failure on the part of the plaintiff to carry the burden of proof on this factor of the *Chevron* test. The Sixth Circuit has recently stated that "[a]ll three factors listed in *Chevron Oil* must be shown to favor prospective-only application before a decision will be denied retroactive effect." *Cochran v. Birkel*, 651 F.2d 1219, 1223 n.8 (6th Cir. 1981), *citing, Valencia v. Anderson Bros. Ford*, 617 F.2d 1278 (7th Cir. 1980).

body of case law *Mohasco* overruled, and the longstanding EEOC regulations it disapproved, we conclude that *Mohasco* was "not clearly foreshadowed" by the Seventh Circuit

approach. (Emphasis added.) Thus the first criterion of *Chevron Oil Co. v. Huson* for only prospective application of *Mohasco* is satisfied. (Citation omitted.)

When confronted with the choice between a 90-day limitations period and one for six years, the Supreme Court opted for the shorter period stressing the "undesirability of the results of the grievance and arbitral process being suspended in limbo for long periods." *Mitchell, supra,* at 64, 101 S.Ct. at 1565. Undoubtedly, the rule enunciated will encourage speedy resort to the courts by plaintiffs dissatisfied with the results of arbitration. However, where speedy resort to the courts occurred as it did in the case at bar prior to the adoption of this rule, the retroactive application of the *Mitchell* rule would not advance its purpose and would only deny plaintiff his day in court despite his adherence to the law as it existed when he filed suit within eighty days of the date he received notification of the arbitration decision. Accordingly, this court finds that the facts of this case favor prospective application of the rule due to plaintiff's expedient recourse to the courts following the adverse arbitration decision.[17]

### C.

■ Finally, the court must weigh "the inequity imposed by retroactive application" of the rule. This third criterion weighs in favor of prospectivity as analyzed under the facts of this case. The Supreme Court in *Chevron* declined to apply the new statute of limitations holding to the case before it which had provided the vehicle for articulating a new rule of law. The Court noted: "[i]t would also produce the most 'substantial inequitable results' to hold that the [plaintiff] 'slept on his rights' at a time

he could not have known the time limitation that the law imposed upon him." (Citation omitted.) *Chevron, supra,* 404 U.S. at 108, 92 S.Ct. at 356. The same "inequitable result" would inure to the detriment of this plaintiff if the statute of limitations period required to be applied pursuant to *Mitchell* were applied to the plaintiff at bar.

Based on the foregoing analysis, this court finds that plaintiff satisfied the three factors of *Chevron.* Accordingly, the rule established in *Mitchell* should not be applied retroactively to bar plaintiff's claims.[18]

### III.

Defendants dispute this court's reliance on *Singer v. Flying Tiger Line, Inc.,* 652 F.2d 1349 (9th Cir. 1981), in which the Ninth Circuit refused to apply the rule of *Mitchell* retroactively to the case at bar. In reaching this result, the court discussed *Chevron* :

> In *Chevron Oil Co. v. Huson,* 404 U.S. 97, 105–108, 92 S.Ct. 349, 354–56, 30 L.Ed.2d 296 (1971), the Supreme Court, in declining to apply a shorter statute of limitations retroactively to extinguish a claim, identified a number of factors that it considered important. In this case, as in *Huson,* we believe that a critical factor is that the rule of the *Mitchell* case is not one which might have been anticipated. Although the *Price* decision is not precisely on point, we believe Singer might reasonably have relied upon it to conclude that he had three years to file a claim.

---

**17.** Other courts have found this second criterion equivocal and insignificant when applied to specific facts. *Marino, supra; Wachovia, supra; Aufiero v. Clarke,* 639 F.2d 49, 51 (1st Cir. 1981). Additionally, courts have placed greater emphasis on the other two factors of the *Chevron* test. *Ramey v. Harber,* 589 F.2d 753, 759 (4th Cir. 1978). No single factor has been found to be controlling. *Zweibon v. Mitchell,* 606 F.2d 1172, 1178 (D.C.Cir.1979).

**18.** Defendants make the additional argument that the *Mitchell* decision itself was applied retroactively to bar plaintiff's claim in that case. Defendants contend that because the Supreme Court applied *Mitchell* retroactively to the case at bar, there is no reason why this court should not find plaintiff's claim untimely

under the new rule. While this sort of argument has facial appeal, adherence to it would emasculate the *Chevron* doctrine. Defendants' argument carried to its logical extreme would preclude a *Chevron* analysis any time the Supreme Court rendered a decision without specifically addressing the retroactivity issue. Because retroactivity is the general rule with a heavy burden on the party arguing for prospective limitation, there is no reason to assume that an absence of a *Chevron* discussion in a specific Supreme Court opinion precludes other courts from further analysis in individual cases. A review of the many cases which undertake a *Chevron* analysis prior to determining the retroactive effect of a new Supreme Court rule rebuts defendants' argument.

In the district court, [defendants] both vigorously argued that Singer's claims were barred by a three year statute of limitations, rather than the shorter period. Their apparent belief that the shorter statute was inapplicable is some further indication that Singer's reliance was reasonable. We conclude that Singer cannot be accused of a lack of diligence in the filing of his claim in district court, at least insofar as the 1977 grievance is concerned. We will therefore apply the statutes of limitations used by the district judge, namely a three year statute for claims against the union and a four year statute for claims against the company.

*Id.* at 1353.

Defendants correctly state that while the Ninth Circuit mentioned *Chevron*, it did not undertake a detailed analysis of its three-pronged test.[19] Defendants attempt to distinguish *Singer*, but this court finds the attempted distinctions unpersuasive.

In *Singer*, the court believed that the holding of *Mitchell* was not one which might have been anticipated. Moreover, the court found that plaintiff's adherence to relatively recent Ninth Circuit precedent "not precisely on point," still constituted reasonable reliance on the part of the plaintiff to preclude retroactive operation of the rule. Thus, the court found the *Chevron* test satisfied. This court has independently evaluated the *Chevron* criteria as applicable to the facts of the case at bar and finds that they preclude the retroactive application of *Mitchell*. The court's previous citation to *Singer* merely draws attention to the fact that another court has reached the

same result on the unique set of facts before it.

## IV.

In the alternative to their motions for reconsideration, defendants move this court for an order certifying an interlocutory appeal under 28 U.S.C. § 1292(b). Title 28 U.S.C. § 1292(b) provides in pertinent part:

(b) When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.

As stated in 9 *Moore's Federal Practice* ¶ 110.22[2] at 260:

But a question need not be dispositive of the case to qualify as a controlling one. The courts have tended to make the "controlling question" requirement one with the requirement that its determination "may materially advance the ultimate termination of the litigation." Nor need the question be related to the substance of the controversy between the parties .... The critical requirement is that it have the potential for substantially accelerating the disposition of the litigation.

The Sixth Circuit limits interlocutory appeals under § 1292(b) to the extraordinary case contemplated by the statute.

As well said by Judge Maris in *Milbert v. Bison Laboratories*, 260 F.2d 431, 433 (C.A. 3):

---

**19.** Very few courts which have applied *Mitchell* retroactively have squarely dealt with *Chevron*. See *Local 1020 v. FMC Corp.*, 658 F.2d 1285 (9th Cir. 1981); *Davidson v. Roadway Express, Inc.*, 650 F.2d 459 (7th Cir. 1981); *Johnson v. Agar Products Co.*, No. 81C2983 (N.D.Ill. Oct. 29, 1981); *Sheeran v. M. A. Bruder & Sons, Inc.*, 524 F.Supp. 567 (E.D.Pa.1981); *Wright v. Monmouth College*, 108 L.R.R.M. 2521 (D.N.J. 1981) (alternative grounds); *Scott v. Chrysler Corp.*, 107 L.R.R.M. 3086 (E.D.Mich.1981). In some instances, local precedent prior to *Mitchell* rendered plaintiff's claim time-barred; in other instances, an argument based on *Chevron* might not have been presented to the court. Still other courts have done a cursory analysis under *Chevron* prior to applying *Mitchell* retroactively. See *Brain v. Roadway Express*, No. C80–2338 (N.D.Ohio Dec. 3, 1981); *McCoy v. Local Union No. 100*, 526 F.Supp. 1256 (S.D. Ohio 1981). Those courts which have examined the retroactive operation of *Mitchell* under the *Chevron* criteria have analyzed the issues under the unique facts presented by each case. *Singer*, 652 F.2d at 1353; *Delcostello v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America*, 524 F.Supp. 721 (D.Md.1981); *Kikos v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America*, 526 F.Supp. 110 (E.D.Mich.1981).

"It is quite apparent from the legislative history of the Act of September 2, 1958 that Congress intended that section 1292(b) should be sparingly applied. It is to be used only in exceptional cases where an intermediate appeal may avoid protracted and expensive litigation and is not intended to open the floodgates to a vast number of appeals from interlocutory orders in ordinary litigation."

*Kraus v. Board of County Road Commissioners,* 364 F.2d 919, 922 (6th Cir. 1966). See also *Cardwell v. Chesapeake & Ohio Railway Co.,* 504 F.2d 444 (6th Cir. 1974).

In examining the criteria of whether an "immediate appeal . . . may materially advance the ultimate termination of the litigation," a district court should assess the probability that its decision of which an immediate appeal is sought is in error as well as the extent to which additional time and expense may be saved by an interlocutory appeal. *Baxter Travenol Laboratories, Inc. v. LeMay,* 514 F.Supp. 1156 (S.D.Ohio 1981). The decision at bar is not the type which, without an immediate appeal, would result in a time-consuming retrial should this court's opinion herein ultimately be found erroneous. Should defendants be unsuccessful on the merits of this case at trial or for any other reason raise the issue at the appellate level, a reversal of this court's decision on the retroactivity question would most likely dispose of the case on appeal without the necessity of a remand or retrial. Additionally, discovery has closed in this matter and the parties are currently preparing summary judgment motions and a final pretrial order. This case could be tried in its entirety before appellate review of the proposed interlocutory appeal takes place.

Sanctioning an interlocutory appeal of this question would encourage the practice of piecemeal appeals specifically criticized by the Sixth Circuit. The issue raised in this opinion is preserved for a timely appeal subsequent to trial should defendants desire to raise it then.

Accordingly, this court finds no merit to defendants' motions for reconsideration and declines to certify an interlocutory appeal.