**Fred MABERY, Plaintiff,**

v.

**Sam P. GARRISON, Warden of Central Prison, Raleigh, North Carolina, and Nicholas Ferraro, District Attorney, Queens County, New York, Defendants.**

No. 74–231–CRT.

United States District Court, E. D. North Carolina, Raleigh Division. June 26, 1975.

Fred Mabery, pro se.

Ralph L. McMurry, Asst. N. Y. Atty. Gen., New York City, for defendant Ferraro.

Jacob L. Safron, Asst. Atty. Gen., Raleigh, N. C., for defendant Garrison.

BUTLER, Chief Judge.

Plaintiff, Fred Mabery, a state prisoner, has been granted leave to file in forma pauperis a civil rights action pursuant to 42 U.S.C. § 1983 seeking a declaratory judgment, injunctive relief, and damages. The gravamen of Mabery's complaint is his allegation that he was removed from North Carolina and transported to New York, incommunicado, for trial on New York charges without being afforded procedural due process and in violation of 18 U.S.C. § 3182 and N.C.G.S. § 148–89 [North Carolina's codification of the Interstate Agreement on Detainers].

## FACTS

Mabery was convicted of rape and kidnapping in North Carolina at the October 2, 1972 Session of the Pitt County Superior Court and sentenced to life imprisonment on each charge. However, on September 12, 1972, an indictment was returned in the Supreme Court of the County of Queens, State of New York, charging Fred A. Mabery with the crimes of first degree robbery, second degree kidnapping, second degree grand larceny, and third degree grand larceny. On August 22, 1973, Mabery filed a Motion for a Speedy Trial in the Queens County Supreme Court which the court denied as premature, the District Attorney having advised the court that New York would take steps to bring Mabery into the jurisdiction of the Supreme Court of New York for the purpose of trial. Thereupon, pursuant to the Interstate Agreement on Detainers, of which both the States of North Carolina and New York are members, N.C. G.S. § 148–89 and Section 669–b of the Code of Criminal Procedure of the State of New York, the Assistant District Attorney of the State of New York for the County of Queens completed Form 7 of the Agreement on Detainers and forwarded it, by letter of transmittal dated September 27, 1973, to the Honorable Sam Garrison, Warden of North Carolina Central Prison. On October 31, 1973, Thomas J. Flaherty, Deputy Chief of the Indictment and Investigation Bureau of the Office of the District Attorney of Queens County, forwarded a signed copy of Form V, "Request for Temporary Custody", pursuant to the Interstate Agreement on Detainers, to James P. Smith, Senior Administrative Assistant in the Department of Social Rehabilitation and Control of the State of North Carolina. By letter dated November 6, 1973, the Honorable James P. Smith, Senior Administrative Assistant of the Depart-

ment of Social Rehabilitation and Control and North Carolina's Agreement Administrator of the Interstate Agreement on Detainers, advised the Honorable James E. Holshouser, Jr., Governor of the State of North Carolina, of the Governor's options under the Interstate Agreement. By letter dated November 7, 1973, Mr. Smith was advised that Governor Holshouser approved the request of Michael F. Armstrong, District Attorney for Queens County, New York, for temporary custody of Fred Mabery for trial under the terms of the Interstate Agreement on Detainers.

However, Mabery apparently changed his mind once it became apparent he was to be returned to the State of New York to stand trial on the charges pending in the Supreme Court of Queens County. On November 29, 1973, an Application for Writ of Habeas Corpus and Restraining Order was filed on Mabery's behalf by John C. Brooks, Esquire. A Show Cause Order was entered November 29, 1973, by the Honorable A. Pilston Godwin, Jr., Judge of the Superior Court of North Carolina, setting the matter down for hearing on December 3, 1973. The matter came on to be heard before the Honorable Henry A. McKinnon, Jr., Judge of the Superior Court of North Carolina, on December 3, 1973. Judge McKinnon found that the Form V filed on November 6, 1973, by Michael F. Armstrong, District Attorney for Queens County, specifically requested the temporary custody of one "Fred A. Newbery" and that Fred Mabery had therefore not received valid notice of the request. Judge McKinnon thereupon entered an Order dated December 3, 1973, directing the Warden to refuse to release the body of Fred Mabery until "there has been a reapplication for his temporary custody by proper authorities in said State [New York] in accordance with the provisions of G.S. § 148–89, Article IV(a); there has been given to the inmate, Fred Mabery, proper notice of any such application; and there has been a renewed approval of said inmate's removal

from the State of North Carolina by the Governor of said State in accordance with the requirements of G.S § 148–89, Article IV(a)." On December 5, 1973, the Honorable James E. Holshouser, Jr., Governor of the State of North Carolina, withdrew approval for Mabery's temporary custody pursuant to Judge McKinnon's Order. The Governor noted that the New York District Attorney's Office may choose to renew the request for Mabery's custody.

The New York authorities did choose to renew their request for Mabery's temporary custody under the terms of the Interstate Agreement on Detainers and by letter of transmittal dated December 7, 1973, Thomas J. Flaherty, Deputy Chief of the Indictment and Investigations Bureau of the Queens County District Attorney, forwarded a copy of Form V of the Agreement on Detainers requesting the temporary custody of Fred A. Mabery. By letter dated December 10, 1973, James P. Smith, Agreement Administrator, once again advised Governor Holshouser of his options under the Interstate Agreement. A copy of this letter was also sent by certified mail, to John Brooks, Esquire, Attorney for Mabery. On December 12, 1973, Governor Holshouser approved the request for the temporary custody of Fred A. Mabery. By letter dated December 20, 1973, Mr. Smith advised Mr. Brooks that "you may take whatever steps you deem necessary. Unless we receive other notice from some other source, Inmate Mabery will be delivered to the temporary custody of the New York authorities sometime on or after January 10, 1974." On December 21, 1973, Sarah Jones, the Governor's Extradition Secretary, advised Mabery that "the Governor could find no justification for refusing the request of Mr. Michael F. Armstrong, District Attorney for Queens County, New York, for your return to New York to stand trial under the terms of the Interstate Agreement on Detainers . . . ." By letter dated January 11, 1974, Sarah Jones wrote Mr. Brooks advising "Gov-

ernor Holshouser has denied your request to delay for six months the release of Inmate Fred Mabery to the New York authorities for the purpose of trial there. Thirty days have now elapsed since the request for custody was received and approved. The District Attorney in New York may assume custody of Inmate Mabery whenever he notifies the North Carolina Department of Correction he is prepared to send for him." The Compact Administrator for the State of New York had approved the agents for the State of New York who were to take custody of Mabery on January 14, 1974, to return him to the State of New York for trial. On the morning of January 14, 1974, the agents for the State of New York secured Mabery's custody and commenced to return him to the State of New York to stand trial. Sometime after Mabery's physical transfer to the agents of the State of New York and their commencement of their return trip to the State of New York, John Brooks, Attorney for Mabery, served an unsigned and unverified copy of a purported show cause order at 3:45 P.M. on the afternoon of January 14, 1974, on Warden Garrison's secretary. Not until the following day did the Sheriff of Wake County serve a signed copy of the Order to Show Cause, at which time Mabery was not only out of the State of North Carolina, but was within the jurisdiction of the State of New York. Mabery was tried in the Queens County Superior Court on June 21, 1974, convicted by a jury of first degree robbery, second degree kidnapping and third degree grand larceny, and sentenced to concurrent terms of twenty-five years on the robbery and kidnapping charges, and a four year concurrent term on the grand larceny charge.

In response to the complaint, the Attorney General of North Carolina, on behalf of the defendant Garrison, filed motions to dismiss and for summary judgment together with a brief in support thereof on the ground that the plaintiff had failed to state a cause of action cognizable under 42 U.S.C. § 1983. The Attorney General of the State of New York, on behalf of the defendant Ferraro, filed a motion to dismiss for lack of jurisdiction and for improper venue, or in the alternative to transfer venue to the Eastern District of New York together with a memorandum of law in support thereof. Plaintiff Mabery filed a memorandum of law in opposition to defendant Garrison's motion to dismiss, and a traverse to defendant Ferraro's motion.

## CONCLUSIONS OF LAW

Rule 4(f) of the Federal Rules of Civil Procedure reads in pertinent part as follows: "All process other than a subpoena may be served anywhere within the territorial limits of the state in which the district court is held, and when authorized by a statute of the United States or by these rules, beyond the territorial limits of that state." In *Smith v. Ellington*, 348 F.2d 1021 (6th Cir. 1965), the Sixth Circuit Court of Appeals, citing Rule 4(f) of the Federal Rules of Civil Procedure, held that service of process was invalid and that the district court lacked jurisdiction over defendants who were residents of Alabama when there was no personal service in Tennessee, the situs of the district court where the § 1983 action was filed. The court also held that the provision of the Civil Rights Act which confers original jurisdiction upon district courts in certain civil rights actions deals with jurisdiction over subject matter, not with personal jurisdiction over defendants. In *Balles v. Harvey*, 248 F.Supp. 778 (E.D.Pa.1965), the plaintiff instituted a civil rights action under 42 U.S.C. § 1983 in the Eastern District of Pennsylvania. One of the defendants was a former Pennsylvania state court judge who had retired from the bench and was living in Florida when he was served with process. The court held that it lacked jurisdiction over the defendant judge since he was not served within the territorial limits of the State

of Pennsylvania as required by Rule 4 (f) of the Federal Rules of Civil Procedure.

■ In view of the foregoing authority, the court is of the opinion that it lacks personal jurisdiction over the defendant Ferraro and that said defendant's motion to dismiss the complaint, as it relates to him, should be allowed.

■ The court is of the opinion that the complaint, as it relates to the defendant Garrison, fails to state a cause of action under 42 U.S.C. § 1983 since Mabery has failed to show that his extradition to New York violated his constitutional rights. Mabery was in the custody of the New York authorities and outside the jurisdiction of the State of North Carolina when Mabery's counsel served an unsigned and unverified copy of a purported show cause order on defendant Garrison on the afternoon of January 14, 1974. The requirements of the Interstate Agreement on Detainers had been met, the Governor of North Carolina had approved New York's temporary custody of Mabery, and defendant Garrison acted pursuant to a valid executive order when he transferred Mabery to the New York authorities. The court is of the opinion that the complaint fails to state a claim against the defendant Garrison, upon which relief may be granted.

Now, therefore,

It is ordered that a judgment be entered dismissing plaintiff's complaint in accordance with the court's memorandum decision.