James L. MARTIN, Plaintiff,

v.

**DELAWARE LAW SCHOOL OF WIDENER UNIVERSITY, et al.,**
Defendants.

Civ. A. No. 85–53.

United States District Court,
D. Delaware.

Dec. 23, 1985.

James L. Martin, pro se.

Somers S. Price, Jr., of Potter, Anderson & Corroon, Wilmington, Del., for defendant Widener University.

F. Alton Tybout, and Anne L. Naczi, of Tybout, Redfearn, Casarino & Pell, Wilmington, Del., for defendants Polyclinic Medical Center and Philhaven Hosp.

Robert B. Young, and Mary E. Sherlock, of Young & Sherlock, Dover, Del., for defendant Commonwealth Nat. Bank.

Stuart B. Young, of Young, Conaway, Stargatt & Taylor, Wilmington, Del., for defendants Lebanon Valley College, Lebanon County Legal Services, and Messrs. Reilly and Feather.

Paul J. Gelman, and Nancy Gilberg, Philadelphia, Pa., for defendants Pennsylvania Board of Law Examiners, Judges Gates and Walter.

Gwendolyn T. Mosley, Deputy Atty. Gen., Harrisburg, Pa., for defendant Dept. of Transp.

## OPINION

FARNAN, District Judge.

Plaintiff, James L. Martin, has brought this action against twelve separate defendants, alleging violations of 42 U.S.C. §§ 1983, 1985, and 1986, Title 7 of the Civil Rights Act of 1964, the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*, the Buckley/Pell Amendment to the Educational Rights Act of 1976, 20 U.S.C. § 1232, as well as the Thirteenth and Fourteenth Amendments to the U.S. Constitution. Plaintiff also seeks a declaration of his rights pursuant to 28 U.S.C. §§ 2201 and 2202, as well as attorneys' fees pursuant to 42 U.S.C. § 1988. He invokes this Court's jurisdiction pursuant to 28 U.S.C. §§ 1343 and 1331. Plaintiff also requests the Court to exercise its pendent jurisdiction over state law claims of breach of contract and intentional infliction of emotional distress.

Plaintiff alleges numerous causes of action. Plaintiff claims that the Pennsylvania Department of Transportation ("D.O.T."), the Pennsylvania Board of Law Examiners ("Law Examiners"), the Lebanon County Legal Services Association, James T. Reilly, and John E. Feather (collectively "Lebanon County Defendants"), Judge Thomas Gates, and Judge John Walter, acted under color of state law to deprive Plaintiff of the opportunity to practice law, in violation of 42 U.S.C. § 1983, and that all other Defendants conspired to deprive Plaintiff of his civil rights, in violation of 42 U.S.C. § 1985, as well as the due process and equal protection clauses of the Fourteenth Amendment. Plaintiff also alleges that "the state authorities refusal to and neglect to prevent further deprivations" violates 42 U.S.C. § 1986. Plaintiff alleges that the acts of Polyclinic Medical Center ("Polyclinic"), Philhaven Hospital ("Philhaven"), Lebanon Valley College ("L.V.C."), Judge Gates and Judge Walter, in causing Plaintiff's detention in psychiatric hospitals, constituted involuntary servitude in violation of the Thirteenth Amendment. In his "Second Claim for Relief", Plaintiff alleges that all Defendants "made secret unilateral determinations that I was guilty of certain dishonest or fraudulent acts", and "punished" him in violation of Title 7 of the Civil Rights Act of 1964. He also alleges that all Defendants violated the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*, by discriminating against him on the basis of his medical history. In his "Third Claim for Relief", Plaintiff alleges

that the Law Examiners "waived the privilege of further inquiry into my fitness to practice law" by allowing him to sit for the Bar Exam, that they were estopped from denying him admission to the Bar by their act of publishing his name as a successful candidate, and that they violated State Bar admission rules requiring the examiners to notify applicants of any finding of unfitness to practice. Plaintiff also alleges that Delaware Law School ("D.L.S.") breached its contract with him by incorrectly informing various state Boards of Law Examiners that Plaintiff had falsified a question on his law school admissions application. He alleges that L.V.C. also breached its contract with him by falsifying his academic transcript. He alleges that Commonwealth National Bank ("C.N.B.") wrongfully dishonored his checks. As a "Fourth Claim for Relief", Plaintiff alleges common law defamation of character and intentional infliction of emotional distress by all Defendants. As a "Fifth Claim for Relief", Plaintiff seeks a declaratory judgment that "the unlawful acts set forth herein were and are still being unconstitutionally perpetrated on behalf of the state, and that such acts shall forthwith cease ..." Complaint, Docket No. 2[1]

BACKGROUND FACTS.

The relevant facts, as alleged by Plaintiff in his Complaint and various briefs, are as follows. Plaintiff claims that Polyclinic and Philhaven admitted and detained him against his will without cause or hearing. Apparently, this action occurred in 1975. Plaintiff alleges that Philhaven subsequently erroneously informed the Law Examiners that he had voluntarily admitted himself to Philhaven for psychiatric care. He alleges that L.V.C., where Plaintiff had been an undergraduate student, falsified his transcripts and supplied "disinformation" to employees of Polyclinic and Philhaven, which was later given to the Law Examiners. Plaintiff alleges that Defendants James Reilly and John Feather, in their capacities as Lebanon County Legal Services attorneys, acted improperly by agreeing to represent Plaintiff in a proceeding against L.V.C., while they were associates of the law firm which was representing L.V.C. Plaintiff alleges that Defendants Judge Gates and Judge Walters improperly "issued orders against him" in his efforts to "get relief from the college's disinformation scheme". Plaintiff alleges that D.L.S. refused to send his transcript to the U.S. Department of Justice, thus preventing him from obtaining full-time employment. Plaintiff alleges that D.L.S. also erroneously concluded that he had falsified his law school application by denying that he had been committed to a mental hospital, and later sent this information to each of the State Boards of Law Examiners to which Plaintiff had applied for admittance. Plaintiff alleges that the Law Examiners refused to admit him to the Bar after he passed the Bar Examination. Plaintiff alleges that the D.O.T. improperly revoked his driver's license in 1981 by relying upon "not [sic] existent medical reports about a neuro-psychiatric condition", and that C.N.B. wrongfully dishonored his checks following his enrollment in law school after agreeing not to do so.

---

1. The Court notes that several of these claims have been the subject of prior litigation. On June 16, 1980, Plaintiff brought suit against L.V.C. in the Court of Common Pleas of Lebanon County, Pennsylvania, alleging that L.V.C. falsified his transcripts and issued "disinformation" about him. That court subsequently granted L.V.C.'s Motion for Summary Judgment (Affidavit of Timothy D. Sheffey, March 21, 1985, Docket No. 51), and Plaintiff's appeal to the Pennsylvania Supreme Court was denied (Plaintiff's Supplementary Answering Brief in Opposition to L.V.C.'s Motion to Dismiss, Exhibit 1, Docket No. 71). Also, on September 25, 1981, Plaintiff filed suit in the United States District Court for the Middle District of Pennsylvania against Polyclinic Medical Center, Philhaven Hospital, employees and officials of Polyclinic and Philhaven, officials of L.V.C., as well as "solicitors for Lebanon County," alleging the same wrongs Plaintiff raises in this action. The Court, per R. Dixon Herman, J., dismissed the action as frivolous, pursuant to 28 U.S.C. § 1915(d) (Affidavit of Timothy D. Sheffey, April 25, 1985, Docket No. 68). C.N.B., in its Brief in support of its motion to dismiss, also indicates that Plaintiff's claims here might arise out of the same issues previously heard and decided in an action by Plaintiff against C.N.B. in the Court of Common Pleas of Lancaster County, Pennsylvania, on October 3, 1983.

All defendants except Polyclinic have moved to dismiss. Each motion will be dealt with separately.

I. *Pennsylvania Board of Law Examiners, Hon. G. Thomas Gates, Hon. John Walter.*

These Defendants collectively moved to dismiss on eight separate grounds: (1) improper venue; (2) lack of *in personam* jurisdiction; (3) the Board of Law Examiners is not a person for purposes of 42 U.S.C. § 1983; (4) failure to join an indispensable party; (5) absolute judicial immunity; (6) the Eleventh Amendment bars Plaintiff's claim for damages; (7) failure to state a claim; and (8) failure to state a claim under 42 U.S.C. §§ 1985 and 1986. The Court finds that venue in this district is improper, and that this Court cannot exercise *in personam* jurisdiction over these Defendants. Therefore, the Court does not reach the other grounds raised.

A. *Venue.*

■ Venue in this action is controlled by 28 U.S.C. § 1391(b), which provides:

A civil action wherein jurisdiction is not founded solely on diversity of citizenship may be brought only in the judicial district where all defendants reside or in which the claim arose, except as otherwise provided by law.

Subject matter jurisdiction in this case is not founded solely on diversity of citizenship, but rather is conferred by 28 U.S.C. §§ 1331 and 1343. The Complaint indicates that all Defendants except D.L.S. reside in the State of Pennsylvania. Also, Plaintiff's allegations indicate that any claim he has against the Law Examiners, Gates or Walter arose in Pennsylvania. Therefore, venue in the District of Delaware is improper.

B. *In Personam Jurisdiction.*

Plaintiff attempted service of process upon these defendants by certified mail at their residences in Pennsylvania. In order for this Court to exercise jurisdiction over these defendants, this service must be adequate under the provisions of F.R.C.P. Rule 4(e) or 4(f).

■ Under Rule 4(f), service of process, by registered mail or otherwise, is limited to the territorial boundaries of the state in which the District Court is located, unless a federal statute or the Federal Rules of Civil Procedure allow otherwise. The only applicable federal statutes here are the civil rights statutes under which Plaintiff alleges this Court's subject matter jurisdiction. However, although these statutes confer subject matter jurisdiction on the Federal Courts, they do not confer *in personam* jurisdiction. *See Mabery v. Garrison,* 405 F.Supp. 134, 138 (E.D.N.C. 1975). Neither do they authorize national service of process. *See Safeguard Insurance Co. v. Maxwell,* 53 F.R.D. 116, 117 (E.D.Pa.1971). Thus, since Plaintiff served these Defendants outside Delaware, Rule 4(f) is inapplicable.

Rule 4(e) allows out-of-state service of process by mail whenever a statute or rule of court of the state in which the District Court sits so provides. Apparently, the only applicable state statute here would be the Delaware Longarm Statute, 10 Del.C. § 3104. That statute provides for jurisdiction over a non-resident defendant who:

(1) transacts any business or performs any character of work or service in this state; (2) contracts to supply services or things in this state; (3) causes tortious injury in this state by an act or omission in this state; (4) causes tortious injury in this state or outside of this state by an act or omission outside this state if he regularly does or solicits business, engages in any other persistent course of conduct in this state or derives substantial revenue from services, or things used or consumed in this state; (5) has an interest in, uses or possesses real property in this state; or (6) contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation or agreement located, executed or to be performed within this state at the time the

contract is made, unless the parties otherwise provide in writing.

10 Del.C. § 3104(c).

Defendants claim that the acts they are alleged to have committed took place solely in Pennsylvania and that none of them engage in any activities in Delaware or have any contact with Delaware. Plaintiff alleges that Defendants have had sufficient contact with Delaware. Specifically, he states that the Law Examiners wrote a letter addressed to him in Delaware, that they communicated with D.L.S. in Wilmington, and that they released his name as a successful Bar Examination candidate to Philadelphia newspapers, which circulate in Delaware. Also, in his various briefs, Plaintiff alleges that the Law Examiners participated in the overall conspiracy against him by denying him a license to practice law in Pennsylvania, and that Judge Gates and Judge Walter participated in this conspiracy by denying him due process of law through their "blatant prejudice and improper orders". Judge Gates and Judge Walter are also alleged to have somehow assisted L.V.C. in its actions against Plaintiff because of their positions as L.V.C. alumni.

 Accepting Plaintiff's allegations as true, the Court finds that these acts are insufficient to confer jurisdiction on this Court through the Delaware Longarm Statute and Rule 4(e). Plaintiff has alleged no facts showing that the Defendants transacted any business or performed any work or service within Delaware, or that they contracted to supply services or things in Delaware. To the extent that Plaintiff alleges tortious injuries, the alleged acts leading to these injuries occurred outside Delaware, and Plaintiff has not shown that Defendants engage in any regular course

of business or other conduct within Delaware. Also, he has not alleged that Defendants have any interest in real property in Delaware, or that they have contracted to insure any person or property within Delaware. Thus, the Delaware Longarm Statute does not apply, and this Court cannot exercise jurisdiction over these defendants.[2]

## II. *Philhaven Hospital.*

Philhaven moved to dismiss on the grounds of insufficient process, insufficient service of process, and lack of *in personam* jurisdiction. In support of this motion, Philhaven asserted by affidavit that it had not transacted any business or performed any work or services in Delaware, that it had not contracted to supply services or things in Delaware, had caused no tortious injury in the state, that it had no interest in real property in Delaware, and that it had not regularly engaged in or solicited business within Delaware.

 Accepting plaintiff's allegations as true, Philhaven's alleged actions did not subject it to this Court's jurisdiction under the Delaware Longarm Statute, Rule 4(e), or Rule 4(p). As with the Law Examiners, Judge Gates, and Judge Walter, the wrongful acts alleged here all took place in Pennsylvania. Defendants were served in Pennsylvania. Plaintiff has alleged no other acts by Philhaven which could confer jurisdiction on this Court pursuant to the Delaware Longarm Statute. Although Plaintiff has alleged that Philhaven's acts in Pennsylvania caused tortious injury in Delaware, he has not alleged, and Philhaven has affirmatively denied, that Philhaven has engaged in any regular course of activity in Delaware, as required under subsection (c)(4) of the Longarm Statute. Thus, this

---

**2.** At oral argument, Plaintiff appeared to concede that the service of process effected here did not comply with Rule 4. However, Plaintiff stated that he did not rely upon Rule 4 to effectuate service, but rather upon paragraph 3 of Judge Stapleton's Order granting Plaintiff's Motion to Proceed In Forma Pauperis, in which Judge Stapleton instructed Plaintiff to "attempt

to effect service of process on the Defendants" (Order of Judge Stapleton, January 24, 1985, Docket No. 1). Judge Stapleton did not, by this instruction. grant Plaintiff permission to avoid the Federal Rules of Civil Procedure. The service of process effected by Plaintiff must still comply with Rule 4, or this Court cannot exercise personal jurisdiction over the Defendants.

Court cannot exercise jurisdiction over Philhaven under Rule 4(e) or Rule 4(f).[3]

### III. *Lebanon Valley College, Lebanon County Legal Services, James Reilly, John Feather.*

These Defendants collectively moved to dismiss, asserting lack of *in personam* jurisdiction and improper venue. They assert, by affidavits, that none of them has conducted any business in Delaware, and that none has any domicile or any interest in real property in Delaware. Defendants also challenge venue on the same grounds as outlined above.

Plaintiff has alleged no facts which could establish this Court's jurisdiction over these defendants. As with the other defendants, the wrongful acts plaintiff alleges occurred solely in Pennsylvania. Plaintiff alleges that these Defendants sent "disinformation" by mail or telephone into Delaware, and that they participated in the overall conspiracy among all Defendants, and that these acts had a tortious impact within Delaware. However, as with the other Defendants, Plaintiff does not allege

that these defendants engage in or solicit business, or engage in any other persistent course of conduct in Delaware, as required by subsection (c)(4) of the Longarm Statute. Thus, this Court cannot exercise jurisdiction over these Defendants under Rule 4(e) or 4(p). Also, for the reasons outlined above, venue in this district would be improper as to these Defendants.[4]

### IV. *Commonwealth National Bank.*

C.N.B. filed a Motion for a More Definite Statement pursuant to F.R.C.P. 12(e) on April 5, 1985, and filed a Motion to Dismiss on July 26, 1985. The Motion for a More Definite Statement requested Plaintiff to provide the specific dates of any alleged breach of contractual obligations by Defendant, and the date of any alleged conspiracy to intentionally dishonor Plaintiff's checks. The Motion to Dismiss asserted lack of *in personam* jurisdiction, insufficient service of process, improper venue, failure to state a claim, failure to allege conspiracy with sufficient particularity, as well as any other reasons as might appear in its brief.[5]

---

**3.** On March 8, 1985, Plaintiff moved for default judgment against Philhaven because Philhaven had not entered an appearance or responded to the Complaint served upon it on January 28, 1985. Philhaven filed an Answer and Motion to Dismiss on March 11, 1985.

Before this Court can enter a default judgment, an entry of default must be made by the Clerk pursuant to Rule 55(a). Plaintiff, in his Answering Brief to Philhaven's Motion to Dismiss, indicates that he requested the Clerk to enter a default, but the Clerk did not do so. However, even if default had been properly entered, the entry of judgment by default pursuant to Rule 55(b)(2) is within the discretion of the trial court. *Duling v. Markum,* 231 F.2d 833 (7th Cir.1956), *cert. denied,* 352 U.S. 870, 77 S.Ct. 96, 1 L.Ed.2d 76 (1956); *Georgia Power Project v. Georgia Power Co.,* 409 F.Supp. 332, 336–37 (N.D.Ga.1975). It appears that Philhaven filed an Answer less than three days after Plaintiff moved for default judgment. Although Philhaven was not timely in its response to the Complaint, Plaintiff has shown no prejudice by this delay. Therefore, the Court declines to enter default judgment against Philhaven.

**4.** Defendants' Motion to Dismiss challenging personal jurisdiction and venue was filed on April 11, 1985. Plaintiff asserts that Defendants waived the right to assert these defenses by

motion when they raised them in their Answer filed February 15, 1985. He apparently relies on F.R.C.P. 12(b) which states that a motion making any of the enumerated defenses "shall be made before pleading if a further pleading is permitted."

Such a rigid interpretation of Rule 12(b) is improper. Although Rule 12(h) requires that a defendant assert lack of *in personam* jurisdiction or improper venue at the first opportunity, it is perfectly acceptable to raise these defenses by either motion or responsive pleading. Filing an Answer which properly raises these defenses prior to the filing of a Motion to Dismiss does not remove the Motion to Dismiss from consideration by the Court on the ground that it is untimely. *In Re Arthur Treacher's Franchisee Litigation,* 92 F.R.D. 398, 413 (E.D.Pa.1981); *Cf. Aldabe v. Aldabe,* 616 F.2d 1089, 1093 (9th Cir. 1980).

**5.** By filing a Motion for a More Definite Statement under Rule 12(e) prior to filing its Motion to Dismiss, C.N.B. has waived the defenses of lack of personal jurisdiction, improper venue, and insufficient service of process. Rule 12(g) and Rule 12(h)(1) clearly provide that these defenses are waived if not raised in any Rule 12 motion. A Rule 12(e) Motion for a More Definite Statement is clearly such a Rule 12 motion.

Plaintiff alleges that C.N.B. conspired with the other Defendants to deprive him of his civil rights, in violation of 42 U.S.C. § 1985. He also alleges that C.N.B., along with the other Defendants, violated the Rehabilitation Act and Title 7 of the Civil Rights Act. As a pendant state claim, Plaintiff also alleges that C.N.B. wrongfully dishonored his checks and terminated his credit, in breach of its contractual duties and in violation of the Uniform Commercial Code.

The only facts plaintiff has alleged to support his conspiracy allegations are that C.N.B.'s wrongful dishonor of his checks occurred at approximately the same time as D.O.T.'s temporary restoration of his driving privileges. In his Brief in Response to C.N.B.'s Motion to Dismiss, Plaintiff alleges that these acts were coordinated for the specific purpose of rendering "moot" Plaintiff's action in Pennsylvania Superior Court. In addition, he alleges that all Defendants "relied upon the removal or misfiling of court documents so that an appeal was either impossible or incomplete." Plaintiff's Brief in Opposition to C.N.B.'s Motion to Dismiss, Docket No. 77, at 10.

### A. *The 1985 Claim.*

■ It has long been settled in this Circuit that claims under Section 1985 must be pleaded with specificity in order to withstand a motion to dismiss. *Fletcher v. Hook,* 446 F.2d 14, 16 (3rd Cir.1971); *Negrich v. Hohn,* 379 F.2d 213 (3rd Cir.1967); *Ross v. Meagan,* 638 F.2d 646, 650 (3rd Cir.1981). Broad, conclusory allegations, unsupported by specific facts implicating specific defendants are insufficient to state a claim upon which relief can be granted. *Negrich,* 379 F.2d at 215; *Scott v. University of Delaware,* 385 F.Supp. 937, 944 (D.Del.1974). The rationale for this requirement was stated in *Kauffman v. Moss,* 420 F.2d 1270, 1276, n. 15 (3rd Cir.

1970) (quoting *Valley v. Maule,* 297 F.Supp. 958 (D.Conn.1968)):

> In recent years there has been an increasingly large volume of cases brought under the Civil Rights Acts. A substantial number of these cases are frivolous or should be litigated in the state courts; they all cause defendants—public officials, policemen and citizens alike—considerable expense, vexation and perhaps unfounded notoriety. It is an important public policy to weed out the frivolous and insubstantial cases at an early stage in the litigation, and still keep the doors of the federal courts open to legitimate claims.[6]

■ Proof of conspiracy is an essential element of a claim for relief under Section 1985. *Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971); *Smith v. Butler,* 507 F.Supp. 952, 953 (E.D.Pa.1981). Thus, under Third Circuit standards, it is insufficient for a plaintiff alleging conspiracy to violate civil rights merely to make broad, conclusiory allegations of such a conspiracy, or to show merely that the defendants had a common goal or acted in concert. *See Chicarelli v. Plymouth Garden Apartments,* 551 F.Supp. 532, 539 (E.D.Pa.1982). Rather, plaintiffs must show through specific facts that the defendant reached an understanding or agreement to violate plaintiff's federally created rights. *See Id.*

■ In this case, Plaintiff has clearly failed to show specific facts supporting his allegations of conspiracy by C.N.B. In his Complaint, Plaintiff merely asserted that all Defendants, presumably including C.N.B., conspired to deprive him of his civil rights. In his Brief in Response to C.N.B.'s Motion to Dismiss, Plaintiff alleged that C.N.B.'s dishonor of his checks was undertaken in conspiracy with the other defendants, and that all defendants con-

Thus, by not raising these defenses at the time it filed its Motion for a More Definite Statement, C.N.B. waived the right to assert them by a subsequent Motion to Dismiss.

**6.** This specificity requirement has been determined not to be inconsistent with the less strin-

gent standards for formal pleadings required of pro se civil rights litigants enunciated by the Supreme Court in *Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). *Gray v. Creamer,* 465 F.2d 179, 182 n. 2 (3rd Cir. 1972).

spired to remove or misfile court documents. The only specific fact Plaintiff alleged in support of any of these allegations was that, "my application for reopening my bank account was unlawfully denied at essentially the same time that the Pa. Bureau of Traffic Safety temporarily restored my license ..." Plaintiff's Brief in Opposition to C.N.B.'s Motion to Dismiss, Docket No. 77, at 10. Clearly, this isolated fact does not approach the showing of an "agreement or understanding" plaintiff must make in order to withstand a motion to dismiss.[7]

### B. *The Rehabilitation Act.*

Plaintiff also alleges that C.N.B., along with the other Defendants, violated Section 504 of Title 5 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. Section 794 provides, in pertinent part, that:

> No otherwise qualified handicapped individual in the United States, as defined in Section 706(7) of this Title, shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance ...

29 U.S.C. § 794.

In order to state a claim under Section 794, the handicapped plaintiff must be the intended beneficiary of or participant in a federally funded program or activity. *N.A.A.C.P. v. Wilmington Medical Center, Inc.,* 426 F.Supp. 919, 923 (D.Del. 1977); *Simpson v. Reynolds Metals Co., Inc.,* 629 F.2d 1226 (7th Cir.1980).[8] Plaintiff has not alleged that C.N.B. receives any federal financial assistance, or operates any program or activity receiving federal financial assistance, within the meaning of Section 794. Therefore, Plaintiff

does not state a claim under Section 794 upon which relief may be granted. *Sheeran v. M.A. Bruder & Sons, Inc.,* 524 F.Supp. 567, 572 (E.D.Pa.1981). Also, Plaintiff has not alleged that he has exhausted available administrative remedies under the Rehabilitation Act. *Wilmington Medical Center,* 426 F.Supp. at 924; *Sheeran,* 524 F.Supp. at 572.

### C. *Title 7.*

Plaintiff alleges that C.N.B., along with the other Defendants, "made secret unilateral determinations that I was guilty of certain dishonest or fraudulent acts, which the evidence refuted; but nonetheless, they proceeded to punish me in violation of Title 7 of the Civil Rights Act ..." Complaint, Docket No. 2, ¶ 28.

Section 703 of Title 7 of the Civil Rights Act, 42 U.S.C. § 2000(e)–2(a) states:

> (a) It shall be an unlawful employment practice for an employer—
>
> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
>
> (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

The purpose of Title 7 is "the elimination of discrimination in employment." *E.E.O.C. v. E.I. du Pont de Nemours & Co.,* 445 F.Supp. 223, 232 (D.Del.1978). *See*

---

7. The Court notes that Plaintiff's allegations of a conspiracy between C.N.B. and D.O.T. could also form the grounds for a claim against C.N.B. under Section 1983. That section prohibits violations of constitutional rights under color of state law, and is applicable to private parties who wilfully participate in joint activty with the state or its agents. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 152, 90 S.Ct. 1598, 1605, 26 L.Ed.2d 142 (1970). However, Plaintiff must

still make the requisite factual showing of conspiracy in order to succeed under § 1983, and, as stated above, he has not done so. *See Chicarelli,* 551 F.Supp. at 539–40.

8. The Third Circuit has held that a private cause of action exists under Section 794. *N.A.A.C.P. v. Medical Ctr., Inc.,* 599 F.2d 1247 (3rd Cir.1979).

*Griggs v. Duke Power Co.*, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971). Generally, to state a claim under Section 2000(e)–2 of Title 7, a plaintiff must show that there is either a current or prospective employer-employee relationship between the parties. *See Delgado v. McTighe*, 442 F.Supp. 725, 729 (E.D.Pa.1977); *Hackett v. McGuire*, 445 F.2d 442 (3rd Cir.1971). Courts in other circuits have determined that, even where a formal employment relationship is lacking, it is sufficient for the plaintiff to assert that the defendant exercised significant control over his access to employment opportunities in a discriminatory manner. *Sibley Memorial Hospital v. Wilson*, 488 F.2d 1338 (D.C.Cir.1970); *Puntolillo v. New Hampshire Racing Commission*, 375 F.Supp. 1089 (D.N.H.1974).[9]

■ Plaintiff here has not alleged that he was either an employee or a potential employee of C.N.B., or that C.N.B. exercised control over his access to employment opportunities. Thus, he has not stated a claim for which relief can be granted under Title 7.

### D. *Pendent State Claims.*

■ Plaintiff requests this Court to exercise its pendent jurisdiction over the state law claims raised against C.N.B. in the Complaint. For this Court to exercise pendent jurisdiction, two requirements must be satisfied. First, the underlying federal claims must be sufficiently substantial to support federal jurisdiction, and second, the state and federal claims must derive from a common nucleus of operative fact, or be such that a plaintiff would ordinarily be expected to try them all in one proceeding. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725–27, 86 S.Ct. 1130, 1138–39, 16 L.Ed.2d 218 (1966); *Blake v. Town of Delaware City*, 441 F.Supp. 1189, 1203–04 (D.Del.1977). Even

when these requirements are satisfied, however, the exercise of pendent jurisdiction is within the court's sound discretion. *Blake*, 441 F.Supp. at 1204. Because the federal claims against C.N.B. have been dismissed, the Court will not exercise its pendent jurisdiction to hear the state law claims asserted. *Id.*

C.N.B.'s Motion to Dismiss the Complaint for Failure to State a Claim shall be granted. Although it appears unlikely that Plaintiff can allege further facts sufficient to withstand the Motion to Dismiss, the Court will allow Plaintiff leave to amend his Complaint against C.N.B. *Rotolo v. The Borough of Charleroi*, 532 F.2d 920 at 923 (3rd Cir.1976).

### V. *Pennsylvania Department of Transportation.*

Plaintiff alleges that Defendant D.O.T. improperly revoked his driver's license "because of nonexistent medical reports about a neuropsychiatric condition", thus depriving him of his civil rights in violation of 42 U.S.C. § 1983. Plaintiff also alleges that D.O.T. conspired with other Defendants to deprive him of his civil rights, in violation of 42 U.S.C. § 1985, and that it neglected to prevent further deprivations, in violation of 42 U.S.C. § 1986. Plaintiff seeks declaratory relief, compensatory and punitive damages, and attorneys fees.

■ It is clear that suits against a state by private parties in federal court, seeking to impose a liability which must be paid from public funds in the state treasury, are barred by the Eleventh Amendment. *Quern v. Jordan*, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979); *Alabama v. Pugh*, 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978). This immunity extends as well to departments and agencies of the state. *Mount Healthy City Board*

---

**9.** In *Sibley,* the defendant hospital referred patients requiring the services of a private duty nurse to an independent nurses registry, which would match the request with the name of an available nurse. The hospital did not actually employ the nurses. On two occasions when plaintiff was selected, the hospital refused to allow plaintiff, who was male, to report to female patients who had requested nurses. The court found that the hospital exercised sufficient control over plaintiff's access to employment to bring the case within the purview of Title 7. *Sibley,* 488 F.2d at 1342.

*of Education v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1974).

■ Because Plaintiff has directly sued an arm of the State of Pennsylvania, and seeks damages directly payable from the state treasury, this Court has no jurisdiction to grant the relief requested. *Edelman v. Jordan,* 415 U.S. 651, 678, 94 S.Ct. 1347, 1363, 39 L.Ed.2d 662 (1974). Therefore D.O.T.'s Motion to Dismiss shall be granted. However, Plaintiff has the opportunity to amend his Complaint to name as defendants any individual state officials who he alleges have violated his civil rights. *See Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908); *Myers v. Anderson,* 238 U.S. 368, 35 S.Ct. 932, 59 L.Ed. 1349 (1915).

## VI. *Delaware Law School.*

Plaintiff alleges that D.L.S. erroneously determined that he had falsified his law school admissions application by denying that he had ever been committed to a mental institution. He alleges that D.L.S. sent this information to each State Board of Law Examiners to which he had applied for admission, thus denying him the opportunity to gain admittance to the Bar. He also alleges that D.L.S. refused to retract and correct the "disinformation" it had distributed. Plaintiff also alleges that D.L.S. improperly refused to forward his law school transcript to the U.S. Department of Justice, thereby denying him the opportunity to obtain full-time employment. Plaintiff alleges that D.L.S. also participated in the overall conspiracy among all defendants. He alleges that these acts violated 42 U.S.C. §§ 1983, 1985 and 1986, Title 7, the

Rehabilitation Act, as well as state law contractual obligations.

D.L.S. moved to dismiss, alleging failure to state a claim, lack of subject matter jurisdiction, and failure to join an indispensable party.

### A. *Section 1983.*

D.L.S. argues that Plaintiff has failed to state a claim under 42 U.S.C. § 1983. The essential elements of a claim under Section 1983 are (1) deprivation of a constitutional right or privilege; and (2) action under color of state law. *See Baker v. McCollan,* 443 U.S. 137, 140, 99 S.Ct. 2689, 2692, 61 L.Ed.2d 433 (1979). Thus, in order to state a claim, Plaintiff must show that D.L.S. acted under color of state law.[10] *Lugar v. Edmondson Oil Co., Inc.,* 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982); *Krynicky v. University of Pittsburgh,* 742 F.2d 94, 97 (3rd Cir.1984), *cert. denied,* — U.S. ——, 105 S.Ct. 2018, 85 L.Ed.2d 300 (1985).

■ No single standard has developed for determining when private conduct can be considered state action. However, the two relevant tests in this case are the "nexus" test of *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974), and the "symbiotic relationship" test of *Burton v. Wilmington Parking Authority,* 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961).[11] The "nexus" test requires a showing of a "sufficiently close nexus between the state and the challenged action", such that the action may be "fairly treated as that of the state itself." *Jackson,* 419 U.S. at 351, 95 S.Ct. at 453. This nexus can be found only when "the

---

10. The requirement of Section 1983 that the action be under color of state law has been interpreted to be identical to the state action requirement of the Fourteenth Amendment. *Lugar v. Edmondson Oil Co., Inc.,* 457 U.S. 922, 929, 102 S.Ct. 2744, 2749, 73 L.Ed.2d 482 (1982).

11. The other two tests are the "public function" test and the "state compulsion" test. The "state compulsion" test only applies to cases where the state has compelled a particular action. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 170, 90 S.Ct. 1598, 1615, 26 L.Ed.2d 142 (1970). Al-

though Plaintiff argues that D.L.S. serves a "public function" in providing legal education, it is clear that private activity can be a "public function" only when the activity performed has been "traditionally the exclusive perogative of the state." *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 353, 95 S.Ct. 449, 455, 42 L.Ed.2d 477 (1974); *Rendell-Baker v. Kohn,* 457 U.S. 830, 842, 102 S.Ct. 2764, 2772, 73 L.Ed.2d 418 (1982). Operating a law school is clearly not such an exclusive activity.

state participated in the challenged conduct itself by 'putting its weight' behind the challenged activity" itself. *Fitzgerald v. Mountain Laurel Racing, Inc.*, 607 F.2d 589, 597 (3rd Cir.1979) (quoting *Jackson*, 419 U.S. at 357, 95 S.Ct. at 456). The "symbiotic relationship" test requires a showing that the state has "so far insinuated itself into a position of interdependence with [the private actor] that it must be recognized as a joint participant in the challenged activity, which, on that account, cannot be considered to have been so 'purely private' as to fall without the scope of the Fourteenth Amendment." *Burton*, 365 U.S. at 725, 81 S.Ct. at 862. *See Braden v. University of Pittsburgh*, 552 F.2d 948, 957 (3rd Cir.1977). Under the "nexus" test,, the court focuses on state involvement in the challenged activity itself, whereas under the "symbiotic relationship" test, the focus is on the overall relationship between the state and the private entity, and the plaintiff need not show state involvement in the particular challenged activity. *See Rendell Baker*, 457 U.S. at 839–43, 102 S.Ct. at 2770–72; *Benner v. Oswald*, 592 F.2d 174, 179 (3rd Cir.1979).

Plaintiff here has alleged no facts from which the Court could conclude that D.L.S. acted under color of state law under either test. In his complaint, he merely alleges that "all defendants" acted under color of state law. In his response to D.L.S.'s Motion to Dismiss, plaintiff again merely alleges that "the Law School's activities are so imbued with state action to be under 'color of state law'". Docket No. 39. At oral argument on D.L.S.'s Motion to Dismiss, plaintiff appeared to base his allegation of state action on the fact that D.L.S. students received government-insured student loans to finance their law school education. He stated that he did not rely on D.L.S.'s direct receipt of any such government aid. He also stated that the fact that D.L.S. was licensed by the State of Delaware, and fulfilled a "public function", as well as the fact that D.L.S. had allegedly conspired with the State of Pennsylvania,

was sufficient for this Court to consider D.L.S. a state actor.

Plaintiff here has not alleged that the state has participated or otherwise "put its weight" behind the challenged activity itself; that is, the alleged dissemination of "disinformation". *See Fitzgerald*, 607 F.2d at 597. Also, the mere receipt of financial assistance from the federal government, no matter how extensive, is insufficient to meet the requirements for state action. *Rendell-Baker v. Kohn*, 457 U.S. 830, 840, 102 S.Ct. 2764, 2770, 73 L.Ed.2d 418 (1982); *Krynicky v. University of Pittsburgh*, 742 F.2d 94, 102 (3rd Cir.1984). It is irrelevant whether this aid is contributed to the school directly, or through some indirect means such as student loans. *See Murphy v. Villanova University*, 547 F.Supp. 512, 517–18 (E.D.Pa. 1982, *aff'd*, 707 F.2d 1402 (3rd Cir.1983). Also, neither the presence of extensive state regulation, nor the existence of a state-granted charter can show the type of pervasive interdependence required to convert private action to state action. *Rendell-Baker*, 457 U.S. at 841–842, 102 S.Ct. at 2771–72. Thus, plaintiff has failed to show either a "symbiotic relationship" between Delaware and D.L.S., or a "close nexus" between the state and the challenged activity.

Plaintiff's allegations that D.L.S. conspired with the State of Pennsylvania to deprive him of his constitutional rights are also insufficient to state a claim under Section 1983. While private action conducted jointly with state officials can constitute a violation of Section 1983, such conspiratorial conduct must be pleaded with specificity. *See Negrich v. Hohn*, 379 F.2d 213, 215 (3rd Cir.1967), *Chicarelli v. Plymouth Garden Apartments*, 551 F.Supp. 532, 539 (E.D.Pa.1982). Plaintiff here has made no more than merely conclusory allegations of conspiracy.[12]

---

**12.** Similarly, conclusory allegations of conspiracy are insufficient to state a claim under Section 1985. *Kauffman v. Moss*, 420 F.2d 1270, 1275–76 (3rd Cir.1970).

## B. *Rehabilitation Act of 1973.*

 Plaintiff also alleges that D.L.S.'s actions violated the Rehabilitation Act of 1973, 29 U.S.C. § 794. However, as with his similar allegation against C.N.B., plaintiff has not alleged that D.L.S. participated in any program or activity receiving federal assistance, or that he was denied participation in such a program on the basis of a handicap. *N.A.A.C.P. v. Wilmington Medical Center, Inc.,* 426 F.Supp. 919, 923 (D.Del.1977); *Sheeran v. M.A. Bruder & Sons, Inc.,* 524 F.Supp. 567 (E.D.Pa. 1981).[13]

## C. *Title 7.*

 Plaintiff alleges that D.L.S.'s actions also violated Title 7, 42 U.S.C. § 2000e–2. However, plaintiff has not alleged any existing or prospective employer-employee relationship with D.L.S. *E.E.O.C. v. E.I. duPont deNemours & Co., Inc.,* 445 F.Supp. 223, 232 (D.Del.1978); *Delgado v. McTighe,* 442 F.Supp. 725, 729 (E.D.Pa.1977). Also, D.L.S. cannot be considered to exercise the degree of control over plaintiff's access to employment sufficient to bring this case within Title 7 under the analysis of *Sibley Memorial Hospital v. Wilson,* 160 U.S.App.D.C. 14, 488 F.2d 1338 (1973), discussed *supra.* Although D.L.S. is alleged to have wrongfully supplied various state bar examiners with "disinformation" which resulted in plaintiff's denial for admission to the bar, D.L.S. does not have the direct nexus with plaintiff's potential employers required to bring its relationship with plaintiff under Title 7 under the analysis of *Sibley. Sibley Memorial Hospital,* 488 F.2d at 1342. It is also noted that at least one court in this Circuit has held that the relationship between bar applicants and bar examiners is not covered by Title 7. *Delgado,* 442 F.Supp. at 730. Since plaintiff here alleges that D.L.S. interfered with his employment opportunities through various state boards of bar examiners, the Court fails to see how D.L.S. can violate Title 7 if the bar examiners cannot.[14]

## D. *State Claims.*

 Plaintiff also asserts state law breach of contract claims against D.L.S. Because plaintiff's federal claims are insufficient to support the exercise of this Court's jurisdiction, and because no independent basis of jurisdiction exists for the state claims, this Court cannot exercise jurisdiction over the state law claims asserted. *United Mine Workers v. Gibbs,* 383 U.S. 715, 725–27, 86 S.Ct. 1130, 1138–39, 16 L.Ed.2d 218 (1966).

Because plaintiff has failed to state a claim against D.L.S. under any of his theories, D.L.S.'s Motion to Dismiss shall be granted. Although it does not seem likely that plaintiff can allege sufficient facts to state a claim, an opportunity to amend shall be granted.

---

**13.** "Assistance" connotes the transfer of government funds by way of subsidy, not merely exemption from taxation. *See Bachman v. American Society of Clinical Pathologists,* 577 F.Supp. 1257 (D.N.J.1983).

**14.** In his brief in response to D.L.S.'s Motion to Dismiss, plaintiff obliquely raises inferences that D.L.S.'s conduct violated the Buckley/Pell Amendment to the Family Educational Rights and Privacy Act of 1976, 20 U.S.C. § 1232g. Although it is unclear whether plaintiff is raising a claim against D.L.S. under this Act, such a claim must be dismissed because this Act does not provide a private cause of action. *See* 20 U.S.C. § 1232g(f). *Girardier v. Webster College,* 563 F.2d 1267, 1276–77 (8th Cir.1977); *Price v. Young,* 580 F.Supp. 1, 2 (E.D.Ark.1983); *Daniel B. v. Wisconsin Dept. of Public Instruction,* 581 F.Supp. 585, 592 (E.D.Wisc.1984). *But see Rios v. Read,* 73 F.R.D. 589, 600 (E.D.N.Y.1977).

Plaintiff also asserts in his brief that the procedures followed by D.L.S. in determining that he had falsified his application for admission did not comply with the procedures required by the 14th Amendment for educational disciplinary proceedings, as suggested by the Supreme Court in *Board of Curators of the University of Missouri v. Horowitz,* 435 U.S. 78, 98 S.Ct. 948, 55 L.Ed.2d 124 (1978), and *Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975). However, the procedures outlined in *Horowitz* and *Goss* apply only to state institutions, and, as discussed above, D.L.S. is a private institution.